IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No.   11-cr-00355-MSK-02

UNITED STATES OF AMERICA,

      Plaintiff,

v.

    1.  WAUNITA WEINGART,
    **2.  JOHN PHILLIP GALLEGOS,**
    3.  ALOIS CRAIG WEINGART.

      Defendants.

**DEFENDANT JOHN GALLEGOS' MOTION FOR SEVERANCE**

Defendant John Gallegos, by and through undersigned counsel, respectfully requests that this Court sever his trial from that of his co-defendants to protect his constitutional right to a fair trial.  As grounds, Mr. Gallegos states as follows:

**I. Background**

Mr. Gallegos is charged together with two co-defendants in an eighteen count indictment.  (Doc. 1).  Counts One through Twelve allege that the defendants knowingly devised and intended to devise a scheme to defraud lenders that funded residential mortgage loans and for obtaining money from them by means of materially false and fraudulent pretenses, representations, and promises.  (*Id.* at ¶ 1).  These substantive counts are based on allegations that the various defendants, individually or in some combination, obtained 41 residential mortgage loans on two separate properties (the Lost Angel and Saxeborough properties).  (*Id.* at ¶ 2).  Of the 41 loans, Mr. Gallegos is named as the sole recipient of seven, all of which pertained to the Lost Angel property.  (*Id.* at ¶ 2(n)).  The indictment also charges six substantive counts of engaging in monetary transactions in property derived from specified unlawful activity.  (*Id.* at ¶ 5).

Mr. Gallegos is charged in seven of the eighteen substantive counts: Counts One, Two, Five, Six, Twelve, Thirteen, and Fifteen. (*Id.* at ¶¶ 4, 5). Mr. Gallegos is only charged in two counts together with Mr. Weingart (Counts One and Two). (*Id.* at ¶ 4). These two counts pertain to loans taken out by Mr. Weingart for the Saxeborough property. (*Id.*). Mr. Gallegos is charged in five counts together with Ms. Weingart (Counts One, Five, Six, Thirteen, and Fifteen). (*Id.* at ¶¶ 4, 5). Only Count Five pertains to a loan in Mr. Gallegos' name. (*Id.* at ¶ 4). Count Fifteen pertains to funds drawn from Ms. Weingart's personal bank account. (*Id.* at ¶ 5).

It is likely that Ms. Weingart's defense will necessary implicate Mr. Gallegos. Beyond a case of mere "finger-pointing," the defenses will be so antagonistic that they are mutually exclusive, requiring severance.

## II. Law and Argument

Joinder of defendants is proper "if they are alleged to have participated in the same act or transaction or the same series of acts or transactions constituting an offense or offenses." Fed.R.Crim.P. 8(b). However, even when defendants have been properly joined, a district court should exercise its discretion to grant a severance under Fed.R.Crim.P. 14 where, as here, there is a serious risk that the joinder "would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). Such a risk might occur when the government presents "[e]vidence that is probative of a defendant's guilt but technically admissible only against a codefendant" or when there are a number of codefendants with markedly different degrees of culpability. *Id.* Similarly, where defendants have mutually antagonistic defenses, a severance is also warranted. *Id.* at 538.

A. <u>A Joint Trial Would Create a Risk of "Spillover" Prejudice.</u>

When multiple defendants are tried together in a complex case and they have markedly different degrees of culpability, the risk of prejudice is heightened. *See Kotteakos v. United States*, 328 U.S. 750, 774-775, 66 S.Ct. 1239, 1252-1253, 90 L.Ed. 1557 (1946). Here, Mr. Gallegos is charged in seven

substantive counts—six of which are charged with at least one of the co-defendants, and one in which he is solely charged. Notably, although Mr. Gallegos is charged with two counts involving the Saxeborough property, there is no allegation that Mr. Gallegos was the named recipient or borrower of any loans pertaining to that property. Instead, the Saxeborough property, which was the source of 26 of the 41 residential mortgage loans, had only Ms. and/or Mr. Weingart as the named borrowers on its loans. (Doc. 1 at ¶ 2(n)). As it relates to Ms. Weingart, the government has specified <u>twenty</u> loans for which Ms. Weingart is the named borrower (*Id.*); and she is named in fifteen of the eighteen counts at issue in this case. (*Id.* at ¶¶ 4, 5).

As a result, if Mr. Gallegos were required to proceed to a joint trial with Ms. Weingart, he would be exposed to spillover prejudice unrelated to her alleged conduct. Thus, without the requested severance, inference and suspicion of guilt alone from a joint trial will prohibit the jury from fairly evaluating the individual culpability of Mr. Gallegos. Severance under these conditions is required. Fed.R.Crim.P. 14; *United States v. Butler,* 494 F.2d 1246, 1254-1257 (10th Cir. 1974); *United States v. Kotteakos*, 328 U.S. 750 (1946); *United States v. Lane*, 883 F.2d 1484, 1498 (10th Cir. 1989).

B.  <u>A Joint Trial Would Violate Mr. Gallegos' Right to Confrontation.</u>

In *Bruton v. United States,* 391 U.S. 123, 137 (1968), the Supreme Court held that admission of a non-testifying codefendant's confession implicating another defendant at their joint trial violates the defendant's rights under the Confrontation Clause of the Sixth Amendment. *See also Gray v. Maryland*, 523 U.S. 185, 193-196 (1998). The Supreme Court held that in such circumstances, the admission is so powerfully incriminating that it would overcome the presumption that a jury will follow a limiting instruction. *Bruton,* 391 U.S. at 135. Further, even where the co-defendant's statement is not facially or directly inculpatory, *Bruton* nevertheless applies "when the statement is evidence of a fact critical to the prosecution's case." *United States v. Sarracino*, 340 F.3d 1148, 1160 (10th Cir. 2003) (citing *United States v. Glass,* 128 F.3d 1398, 1404 (10th Cir. 1997)).

Mr. Gallegos' co-defendants have made statements that implicate *Bruton*. Specifically, in their

respective bankruptcy proceedings, Mr. and Ms. Weingart provided statements pertaining to and admitting to liability for many of the residential mortgage loans upon which this case is based. (00027615 through 00027683).  Admission of these statements would be highly prejudicial to Mr. Galleogs, without affording Mr. Gallegos the opportunity to confront Mr. and Ms. Weingart regarding said statements.

Assuming the government intends to introduce Mr. and/or Ms. Weingart's statements at trial, Mr. Gallegos cannot receive a fair trial without a meaningful opportunity to cross examine them, irrespective of the Court's issuance of a limiting instruction. *See United States v. McVeigh*, 169 F.R.D. 362, 366 (D.Colo. 1996).  Accordingly, admission of their statements in a joint trial would deny Mr. Gallegos his right to confront witnesses against him as secured by the Sixth Amendment under *Bruton*. *See Pointer v. State of Texas*, 380 U.S. 400, 404, 406-407 (1965).

    C.    <u>A Joint Trial Will Result in the Presentation of Mutually Exclusive Antagonistic Defenses.</u>

Severance is appropriate under Fed. R. Crim. P. 14 where the defense of one co-defendant is so antagonistic to another co-defendant as to preclude a fair trial.  Courts have long recognized that "'mutually antagonistic' or 'irreconcilable' defenses may be so prejudicial in some circumstances as to mandate severance." *Zafiro*, 506 U.S. at 538-39.  In order to demonstrate the existence of antagonistic defenses, however, "more than mere finger pointing is required." *Id.* at 540-541.  In this regard, the Tenth Circuit recognizes that "[t]he Defendant must demonstrate that the acceptance of one party's defense would tend to preclude the acquittal of the other, or that the guilt of one defendant tends to establish the innocence of the other." *United States v. Peveto*, 881 F.2d 844, 857 (10th Cir.) cert denied, 493 U.S. 943 (1989).  However, antagonism may also result from "substantial and significant differences in the tactical approaches taken by [codefendants] respective counsel," as well as "different positions on evidentiary objections, and different approaches to the cross-examination of the government's witnesses and in the presentation of defense witnesses."  *McVeigh*, 169 F.R.D. at 370.

Based upon investigation to date, it has become readily apparent that Mr. Gallegos intends to present a highly antagonistic defense to Ms. Weingart at trial.  While undersigned counsel has no specific knowledge pertaining to the defense that Ms. Weingart intends to present at trial, aspects of Ms. Weingart's *modus operandi*, including apparent forgeries of Mr. Gallegos' signature, suggest that it was her intent all along to blame Mr. Gallegos for her own conduct.  Thus, it appears that acquittal for Mr. Gallegos can only be had if he is successful in persuading the jury to reject Ms. Weingart's presumed defense.  Mr. Gallegos' defense at trial will establish that Ms. Weingart ran all business entities involved and named in the indictment (Doc. 1 at ¶ 2(b)); and she failed to inform him concerning the true circumstances surrounding the bank loans at issue and misled Mr. Gallegos into believing that loan paperwork signed by him pertaining to the Lost Angel property related to legitimate refinances.  Mr. Gallegos' defense will outline that Ms. Weingart used an unknowing Mr. Gallegos as a figurehead for her companies so she could fulfill her scheme.

Mr. Gallegos and Ms. Weingart's defenses are beyond mere finger-pointing, but are so antagonistic that they are mutually exclusive and irreconcilable. *Zafiro*, 506 U.S. at 540-41.  Acceptance of Ms. Weingart's defense would necessarily preclude, or at a minimum, "tend to preclude" the acquittal of Mr. Gallegos.  Simply put, in order to accept Mr. Gallegos' defense, the jury must simultaneously reject any defense tendered by Ms. Weingart.  *Peveto*, 881 F.2d at 857.  In this most extreme case of irreconcilable defenses, a joint trial would be so prejudicial as to mandate severance.  *Zafiro*, 506 U.S. at 538-39.

It is likely, although not known with any certainty to date, that Mr. Weingart's defense will be in alignment with Ms. Weingart's defense.  As such, argument in support of severance from Ms. Weingart is applicable to support severance from Mr. Weingart as well.

Respectfully submitted this 26th day of March, 2012.

                                                 *s/William Taylor*  
                                                 William L. Taylor  
                                                 RIDLEY, MCGREEVY & WINOCUR, P.C.  
                                               *Attorney for John Gallegos*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of March, 2012, I filed the foregoing **Defendant John Gallegos' Motion for Severance** with the Clerk of Court using the CM/ECF system to all interested parties.


/s/ *Heather Cratty*
Heather Cratty