IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 11-cr-355-MSK

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.   WAUNITA WEINGART
2.   **JOHN PHILLIP GALLEGOS**
3.   ALOIS CRAIG WEINGART

    Defendants.

**GOVERNMENT'S RESPONSE TO DEFENDANT JOHN GALLEGOS'
MOTION FOR SEVERANCE (DOC. #71)**

    The United States of America, by and through John F. Walsh, United States Attorney for the District of Colorado, and Linda Kaufman, Assistant United States Attorney, responds to Defendant John Gallegos' Motion for Severance (Doc. #71), as follows:

    1.     Defendant John Gallegos requests that the Court sever his trial from that of his co-defendants. The government opposes the defendant's motion.

    2.     Fed.R.Crim.P. 8(b) permits defendants to be charged in the same indictment if they are alleged to have participated in the same series of acts or transactions constituting an offense or offenses. In this case, the defendants are alleged to have participated in the same fraudulent scheme. They are therefore properly joined. Fed.R.Crim.P.14(a) permits a district court to grant relief from prejudicial joinder if prejudice is shown. It leaves the tailoring of the relief to be granted, if any, to the sound discretion

of the Court. Zafiro v. United States, 506 U.S. 534, 538-39 (1993). Less drastic measures than severance often cure any risk of prejudice. Id. at 539. When defendants have been properly joined under Rule 8(b), as here, the Court should grant a severance under Rule 14 "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Id.

   3.  There is a clear preference for joint trials of defendants who are indicted together. Joint trials promote efficiency and serve the interests of justice by avoiding multiple trials and inconsistent verdicts. Id. "The strong presumption in favor of joint trials is designed to conserve judicial resources, alleviate the burden on citizens serving as jurors, and avoid the necessity of having witnesses reiterate testimony in a series of trials." United States v. Kennedy, 819 F.Supp. 1510, 1516 (D. Colo.) (citation and internal quotation marks omitted). Joint trials also help avoid "the scandal and inequity of inconsistent verdicts." Richardson v. Marsh, 481 U.S. 200, 209, 107 S.Ct. 1702, 1708, 95 L.Ed 2d 1786 (1987). Consequently, "[c]ourts generally adhere to the principle that 'those indicted together, especially co-conspirators, should be tried together.'" United States v. Peveto, 881 F.2d 844, 857 n.16(10th Cir.), cert.denied, 110 S.Ct. 348 (1989) (citation and internal quotation marks omitted.) Inasmuch as severance is a matter of discretion and not of right, the defendant must bear a heavy burden of showing real prejudice to his case. United States v. McConnell, 749 F.2d 1441, 1444 (10th Cir. 1984).

4.     Defendant Gallegos asserts that he is entitled to a separate trial because a joint trial would: (a) create a risk of "spillover" prejudice; (b) violate his right to confrontation; and (c) result in the presentation of mutually exclusive antagonistic defenses.

### A. "Spillover" Prejudice

5.     The defendant asserts that at a joint trial with Ms. Weingart, he would be "exposed to spillover prejudice unrelated to her [SIC] alleged conduct." (Doc. 71 at 3). "Neither a mere allegation that [a] defendant would have a better chance of acquittal in a separate trial, nor a complaint of the 'spillover effect' from evidence that was overwhelming or more damaging against the co-defendant than that against the moving party is sufficient to warrant severance." United States v. Cardall, 885 F.2d 656, 668 (10th Cir. 1989).

6.     The government's theory of prosecution at trial will almost certainly be that John Gallegos is criminally liable as an aider and abettor.[1] To establish the guilt of an aider and abettor, the government must first prove that someone else committed the charged offense and that the aider and abettor intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about. Nye v. Nissen, 336 U.S. 613, 619 (1949); 10th Cir., Criminal Pattern Jury Instruction #2.06 (2005). Thus, whether Defendant Gallegos is tried in a joint trial or in a separate trial, the government will be required to present evidence not only of his participation, but also that someone else (here, Defendant Waunita Weingart) committed wire fraud.

7.     Evidence of Waunita Weingart's guilt will not constitute "unrelated" or "spillover" evidence, as the defendant suggests, but will be necessary proof of each of the

---

[1] Aiding and abetting is not an independent crime. United States v. Scroger, 91 F.3d 1256, 1262 (10th Cir. 1997).

defendant's counts of wire fraud. That is, to prove each count of wire fraud against Defendant Gallegos as an aider and abetter, the government will be required to show, as the first element of each count of wire fraud, that another person, (in this case, Waunita Weingart) devised the alleged fraudulent scheme. The government's evidence at separate trials would thus be virtually identical, requiring repeated appearances of the same witnesses and repeated presentations of the same testimony and exhibits. The defendant's concern about the potential spillover effect of evidence implicating Waunita Weingart would thus not be ameliorated by a separate trial.

8.    The defendant's argument focuses on the number of the counts with which each defendant is charged, the fact that he is not alleged to have been the borrower on any of the Saxeborough loans, and that there were more Saxeborough loans than Lost Angel loans. From this, he would have the Court conclude that the evidence relating to the Saxeborough loans will be "unrelated to" the crimes with which he is charged. This argument is supported neither by the nature of the offense of wire fraud nor the language of the indictment. A scheme to defraud is not limited to an individual victim (or in this case to an individual loan). A "scheme to defraud has a wider meaning than an individual act of fraud. A scheme refers to an overall design to defraud one or many by means of a common plan or technique." United States v. Massey, 48 F.3d 1560, 1566 (10th Cir. 1995) (referring to wire fraud).[2] A defendant's personal involvement in every aspect of the scheme is not required, once he has knowingly involved himself in the fraudulent scheme. United States v. Funt, 896 F.2d 1288, 1294 (11th Cir. 1990).

---

[2]The law relating to a mail fraud scheme has long been also applied to wire fraud schemes. United States v. Bruno, 809 F.2d 1097 (5th Cir. 1987).

4

9. The indictment does not charge, nor will the evidence show two schemes, one relating only to the Saxeborough property, and one relating only to the Lost Angel property. There was one scheme to fraudulently obtain funds through the repeated refinancing of two properties. Nor does the indictment allege that the defendant's involvement in the charged scheme was limited to his role as a borrower on Lost Angel loans. In fact, the evidence the government will present in its case-in-chief at trial, will show that Defendant Gallegos was involved not only in transactions relating to Lost Angel but also in transactions relating to Saxeborough. Examples of the various ways Defendant Gallegos participated in the alleged fraud include the following:

    a. He participated in creating Paradigm Escrow and Title, LLC, G-4 Holding Company, LLC, Colorado County and Community Title, LLC, which were used in connection with both the Saxeborough and Lost Angel loans;

    b. He was a licensed insurance producer who, on behalf of Colorado County and Community Title and later on behalf of Real Estate Title, LLC, contracted with Fidelity National Title Insurance Company to serve as issuing agent for Fidelity, the underwriter for title insurance issued for loans relating to both Saxeborough and Lost Angel;

    c. He held himself out as president of G-4 Holding Company, LLC, a mortgage originator, and as such, he contracted with Factual Data to obtain credit reports;

    d. He was the borrower on seven of the loans for Lost Angel;

    e. He acted as the loan broker/loan processor on some of the

5

        Saxeborough loans;

   f.    He was the closer/escrow agent on at least four loans, three of which were for Saxeborough;

   g.    He and one or both of the co-defendants had signature authority on joint bank accounts for Paradigm Escrow and Title Co., LLC, Transaction Coordinator Services, LLC, Colorado County and Community Title, LLC, G-4 Holding Co, LLC, and Real Estate Title, LLC. which were used in connection with fraudulent Lost Angel and Saxeborough loans;

   h.    He used a false social security number to open many of these corporate and personal accounts;

   i.    He made payments on loans which should have previously been paid off, and permitted similar automatic loan payments to be made from his personal accounts on a monthly basis over a period of years.

10.    The defendant relies upon <u>Kotteakos v. United States</u>, 328 U.S. 750 (1946) and <u>United States v. Butler</u>, 494 F.2d 1246 (10th Cir. 1974). In those cases, the indictments charged 32 and 23 defendants respectively, and in each case there were significant variances between the number of conspiracies charged and the number proved at trial. This case charges only three defendants and one scheme that involved two properties, and does not present the same problems present in those more complex cases.

### B. Right to Confrontation

11.    The defendant asserts that his co-defendants have made statements that implicate <u>Bruton v. United States</u>, 391 U.S. 123 (1968). He states, "Specifically, in their

respective bankruptcy proceedings, Waunita Weingart and Alois Craig Weingart made statements pertaining to and admitting liability for many of the residential mortgage loans upon which their case is based." Unfortunately, this "specific" reference is not very specific. It is not clear from the defendant's motion, for example, whether the statements which he describes as "pertaining to" are the same as, or in addition to, the statements he describes as "admitting liability for" the mortgage loans which are the subject of this case. He references Bates' numbers 00027615-00027683, which are those pages from the United States Bankruptcy Court for the District of Arizona which relate to the Weingart's joint bankruptcy filed July 2, 2009. These pages do not contain a confession to the charged offenses. Nor do they refer to or directly implicate Defendant John Gallegos in the charged offenses.

12.     The government believes that the statements to which the defendant likely refers are certain entries in the Weingarts' Schedule F (Creditors Holding Unsecured Nonpriority Claims). Although one cannot immediately tell from the face of the Schedule F whether the listed debts are those resulting from the fraudulent scheme, when they are examined in combination with other evidence in this case, it becomes apparent that many of the listed debts relate directly to the mortgages the Weingarts obtained as part of the charged scheme.[3]

13.     <u>Bruton</u> held that a defendant's right to confront the witnesses against him is violated by the admission of an out-of-court confession by a co-defendant if the confession

---

[3] Defendant Gallegos also filed a voluntary petition in the United States Bankruptcy Court for the District of Arizona on July 13, 2009, in which he similarly listed the note holders for the loans he is alleged to have obtained as borrower in the alleged scheme as creditors holding unsecured nonpriority claims.

implicates the defendant and the co-defendant does not testify at trial, regardless of whether a limiting instruction is given. Bruton v. United States, 391 U.S. at 126. Since the statements which are the subject of Defendant Gallegos' motion do not constitute a confession to the charged (or any) crime and do not facially implicate the defendant, the first issue is whether Bruton applies. The government submits that it does not.

14. In the specific context of the facts of Bruton, where the "powerfully incriminating extrajudicial statements" of a co-defendant were presented at trial, the Supreme Court concluded that the risk that the jury would not or could not follow a limiting instruction was so great, and the consequences of its failure to follow a limiting instruction so vital to the defendant, that the practical and human limitations of the jury system could not be ignored. It therefore ruled that a limiting instruction would not provide sufficient protection. 391 U.S. at 135-136. What constitutes "powerfully incriminating extrajudicial statements"has not been left to be assessed on a case-by-case basis. "Rather, that factor was one of the justifications for excepting from the general rule the entire category of co-defendant confessions that implicate the defendant in the crime." Cruz v. New York, 481 U.S. 186, 191 (1987).

15. Further, in Richardson v. Marsh, 481 U.S. 200, 207 (1987), the Court emphasized that in Bruton, it had created a narrow exception to the principle that jurors can be expected to follow instructions given them. It noted that in Bruton, the co-defendant's confession "expressly implicate[d]" the defendant as his accomplice, such that at the time that the confession was introduced, there was not the slightest doubt that it would prove "powerfully incriminatory", (citing Bruton v. United States, 391 U.S. at 124 n.1). In Richardson v. Marsh however, the confession was not incriminating to the co-defendant

8

on its face, and became so only when linked with evidence introduced later at trial. Id. at 208. Therefore, the Court held, the Bruton rule (requiring exclusion of the statement or severance of defendants) did not apply.

16.     The Tenth Circuit Court of Appeals has rejected a broad interpretation of Bruton and declined to extend it to require the exclusion of statements that "are not directly inculpatory, but only inferentially incriminating." United States v. Sarracino, 340 F.2d 1148, 1160 (10th Cir. 2003). See also United States v. Rahseparian, 321 F.3d 1267, 1277 (10th Cir. 2000), citing Richardson v. Marsh, 481 U.S. at 208; United States v. Markopoulos, 848 F.2d 1036, 1038-39 (10th Cir. 1988) (holding that a co-defendant's statement which included a direct reference to his role in transporting marijuana was only inferentially incriminating as to the defendant, and thus did not invoke the Bruton rule); United States v. Chatman, 794 F.2d 1510, 1413 (10th Cir. 1993), cert.denied, 520 U.S. 883 (1993) (similarly holding defendant's inferential incrimination argument unavailing).

17.     "Only when the inculpatory inference can be made immediately in the mind of a reasonable juror is the statement protected by Bruton, and any curative instruction insufficient." United States v. Rahseparian, 231 F.3d at 1278. The Weingarts' entries are not only not incriminating on their face to Defendant Gallegos, they are not incriminating on their face to the Weingarts.

18.     Apparently recognizing this problem, the defendant would therefore have the Court find that even though the Weingarts' entries on their Schedule "F" filing are not facially or directly inculpatory to him, Bruton should apply because the statements are evidence of a fact "critical" to the prosecution's case, citing United States v. Glass, 128 F.3d 1398, 1404 (10th Cir. 1997). The defendant, however, fails to articulate precisely what

9

makes anything that either of the Weingarts states in Bates' pages 00027615 through 00027683 "critical" to the prosecution of the case against Defendant Gallegos. The government does not view the evidence as critical to its case.

19.     Further, if the government offers the Weingart's Schedule F filing at trial, it will likely not be to prove the truth of the matters asserted, i.e., that they owed the particular lenders particular sums for particular unsecured loans, but rather to show that they had knowledge of those facts. The Confrontation Clause would not bar the use of these statements for a purpose other than establishing the truth of the matters asserted. Tennessee v. Street, 471 U.S. 409, 414-416 (1985), and a limiting use instruction would be sufficient.

20.     The government submits that any potential prejudice to Defendant Gallegos caused by the admission of the Weingarts' Schedule F or statements set forth in Bates' 00027615 through 00027683 could properly be cured by limited use instruction at trial.[4]

### C. "Mutually Exclusive Antagonistic Defenses"

22.     The defendant alleges that his and co-defendant Waunita Weingart's defenses are irreconcilable, mandating severance of their cases. Severance is not required where co-defendants rely on different defenses unless the defenses are so antagonistic that they are mutually exclusive. United States v. Esch, 832 F.2d 531, 538 (10th Cir. 1987). An irreconcilable, mutually antagonistic defense exists when the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other, United States

---

[4]Nothing would need to be redacted, because there is no reference to Defendant Gallegos. If Waunita Weingart and Alois Craig Weingart testify at trial, the Confrontation Clause issue would become moot.

v. Linn, 31 F.3d 987, 992 (10th Cir. 1994), or when the acquittal of one defendant would necessarily result in the conviction of the other. United States v. Adler, 879 F.2d 491, 497 (9th Cir. 1988).

23. The defendant states that his defense will be that: (1) Waunita Weingart ran all business entities involved and named in the indictment; (2) Waunita Weingart failed to inform him about the true circumstances surrounding the bank loans at issue, and (3) that she misled him into believing that loan paperwork signed by him pertaining to the Lost Angel property related to legitimate refinancings.

24. He admits that he has no specific knowledge of the defense Waunita Weingart intends to present at trial, but nevertheless asserts that he can only be acquitted if the jury rejects her "presumed" defense. He opines that Waunita Weingart intended "all along" to blame him for her own conduct, and that her defense at trial will be that he committed the crimes, and that she did not.

25. The defendant has failed to establish through his conclusory allegations that his and Co-defendant Waunita Weingart's defenses at trial will be so antagonistic as to be mutually exclusive. Defendant Gallegos refers to "apparent forgeries" of his signature on some of the documents associated with the loans. He concludes, apparently without knowing, that Waunita Weingart forged his name or caused someone else to forge it. He discounts other reasonable possibilities, i.e., that a jury could find that someone else signed his name or caused another to sign it, that someone forged his name with his knowledge and actual or implicit consent; or that it cannot be proved who signed his name on those documents.

11

26.     Beyond that, a jury could conceivably find that Waunita Weingart ran the businesses involved in the scheme, failed to inform John Gallegos that the loans were fraudulent, caused him to believe that the loan paperwork he signed relating to the Lost Angel loans was legitimate, and still acquit her. That is, the jury could also find that Waunita Weingart ran the businesses but did not commit certain acts associated with the fraud, and/or lacked the requisite knowledge and specific intent to defraud. Similarly, a jury could acquit Defendant Gallegos regardless of whether Waunita Weingart blames him. Assuming, arguendo, that her defense will be as he surmises, a jury could conclude that her version of the facts (placing all blame on him) is incredible, convict her and acquit him.

27.     In essence, Defendant Gallegos' defense is apparently that he lacked knowledge of the fraudulent nature of the loans and had no intent to defraud the lenders. Defendant Waunita Weingart could also claim ignorance and lack of intent to defraud. There is no logical inconsistency between those theories. Zafiro v. United States, 506 U.S. at 542. Even if the two defendants both claimed that they were innocent and accused the other of the crime, as Defendant Gallegos supposes they will, the jury need not conclude (1) that both are lying and convict them both on that basis, or (2) that at least one of the two must be guilty regardless of whether the government has proved its case beyond a reasonable doubt. Id. at 540 (938).

28.     The defendant admits that he does not know what Defendant Alois Craig Weingart's defense will be, but speculates that it will "likely be in alignment with Ms. Weingart's defense," (Doc. 71 at 5). This assertion falls woefully short of meeting the defendant's burden of establishing that the defenses will be mutually exclusive.

29.     Further, even if the defenses Defendant Gallegos describes were to pose some risk of prejudice, it would be of the type that could be cured with proper instructions, namely: (1) an instruction that the government has the burden of proving each defendant's guilt beyond a reasonable doubt; (2) an instruction that the jury must give separate consideration to each defendant and each charge against him or her; (3) an instruction that the arguments of counsel are not evidence; and (4) an instruction that the jury may draw no inferences from a defendant's exercise of his right to remain silent. See Zafiro v. United States, 506 U.S. at 541.

## Conclusion

30.     In deciding on a motion for severance, the Court has a duty to weigh the prejudice resulting from a joint trial against the expense and inconvenience of separate trials. Here, the defendants are charged with having participated in the same fraudulent scheme, and whether the trials are joint or separate, the government will be required to present the same evidence. The defendant has failed to establish that there is a serious risk that the jury at a joint trial in this case will be unable to make reliable judgments about guilt or innocence, that there is a substantial likelihood of actual prejudice to him from a joint trial, or that any of his specific trial rights would be violated. His motion should therefore be denied.

Respectfully submitted,

JOHN F. WALSH
United States Attorney

By: *s/ Linda Kaufman*
Linda Kaufman
Assistant United States Attorney
1225 Seventeenth Street, Suite 700
Denver, Colorado 80202
Telephone: (303) 454-0100
Facsimile: (303) 454-0404
E-mail: Linda.Kaufman@usdoj.gov
Attorney for Government

**CERTIFICATE OF SERVICE**

I certify that on this 3rd day of April 2012, I electronically filed the foregoing **GOVERNMENT'S RESPONSE TO DEFENDANT JOHN GALLEGOS' MOTION FOR SEVERANCE (DOC. #71)** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

**Martin Adam Stuart**
Email: martinstuartlaw@solucian.com

**William Lewis Taylor**
Email: wltaylorpc@gmail.com

**Ms. Paula M. Ray**
E-mail: paulamray@earthlink.net

By: *s/ Solange Reigel*
SOLANGE REIGEL
Legal Assistant to AUSA Linda Kaufman
United States Attorney's Office
1225 - 17th Street, Suite 700
Denver, CO 80202
Telephone: (303) 454-0244
Fax: (303) 454-0402
E-mail: solange.reigel@usdoj.gov