IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 11-cr-355-MSK

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. WAUNITA WEINGART
2. **JOHN PHILLIP GALLEGOS**
3. ALOIS CRAIG WEINGART,

    Defendants

## PLEA AGREEMENT

The United States of America (the government), by and through Linda Kaufman and Martha Paluch, Assistant United States Attorneys for the District of Colorado, and the defendant, John Phillip Gallegos, personally and by counsel, William L. Taylor and Darlene A. Bagley of the firm Ridley, McGreevy & Winocur, P.C., submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1.

### I. AGREEMENT

The defendant agrees to plead guilty to the one-count Information, which charges a violation of 18 U.S.C. § 1014, making a false statement to a bank. The defendant agrees that he is knowingly and voluntarily waiving his right to be indicted by a grand jury on this charge and agrees to execute a separate written waiver to that effect.

The defendant also agrees that venue for his offense is proper in the District of

1

Court's Exhibit 1

Colorado, and knowingly and voluntarily waives any right to challenge the Information on the ground that venue does not lie in the District of Colorado.

The defendant further agrees to pay a $100.00 special assessment applicable to Count 1 of the Information at or before the time of sentencing.

The government agrees that at the conclusion of the change of plea hearing, it will move to dismiss all of the charges in the Indictment against Defendant John Phillip Gallegos with prejudice. The government agrees not to file any additional charges against the defendant based on the information presently known to the United States Attorney's Office for the District of Colorado. The government agrees that if the defendant enters and maintains his guilty plea through sentencing as contemplated by this agreement, the government will request that he be given full credit for acceptance of responsibility, and accordingly will file a motion pursuant to §3E1.1(b). The government agrees that it will seek a sentence within the applicable advisory guidelines sentencing range for the offense of conviction, as found by the Court, and will seek neither an upward departure nor a variant sentence in excess of that range.

The parties agree that the total restitution in this case is approximately $984,618.35.

This agreement is submitted to this Court for consideration pursuant to 11(c)(1)(A) of the Federal Rules of Criminal Procedure.

The defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. Understanding this and in exchange for the government's performance of its obligations under this plea agreement, the defendant

knowingly and voluntarily waives his right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following three criteria: (1) the sentence imposed is above the maximum penalty provided in the statute of conviction, 2) the Court, after determining the otherwise applicable sentencing guideline range, either departs or varies upward, or (3) the Court determines that the guideline offense level is greater than 18, and imposes a sentence based upon that offense level determination. Except as provided above, the defendant also knowingly and voluntarily waives his right to appeal the manner in which the sentence is determined on grounds set forth in 18 U.S.C. § 3742. The defendant also knowingly and voluntarily waives his right to challenge this prosecution, conviction, or sentence and/or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255. This waiver provision, however, will not prevent the defendant from seeking relief otherwise available if: (1) there is an explicitly retroactive change in the applicable guidelines or sentencing statute, (2) there is a claim that the defendant was denied the effective assistance of counsel, or (3) there is a claim of prosecutorial misconduct. Additionally, if the government appeals the sentence imposed by the Court, the defendant is released from this waiver provision.

## II. ELEMENTS OF THE OFFENSE

The parties agree that the elements of the offense to which this plea is being tendered are as follows:

1. Countrywide Bank, FSB was an institution the accounts of which were insured by the Federal Deposit Insurance Corporation;

2. The defendant made a false statement to Countrywide Bank, FSB as alleged in the information;

3. The defendant knew that the statement was false when he made it;

4. The defendant intended to influence the bank to loan him money.

## III. STATUTORY PENALTIES

The maximum statutory penalty for a violation of 18 U.S.C. § 1014 is: not more than 360 months' imprisonment; not more than a $1,000,000 fine, or both; not more than 5 years' supervised release; a $100 special assessment fee; plus restitution.

If supervised release is imposed, a violation of any condition of supervised release may result in a separate prison sentence and additional supervision.

## IV. COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury.

## V. STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. §3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

4

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. §3553 factors, or to the Court's overall sentencing decision.

The parties agree that the date on which relevant conduct began is approximately April 11, 2005.

The parties agree as follows:

### Factual Basis:

Between April 2005 and January 2008, Defendant John Phillip Gallegos refinanced his property located at 7603 California Ave. SW, Seattle, Washington, three times and obtained one line of credit. Each time, he signed a loan application to be submitted to a financial institution for the purpose of influencing it to loan him the amount of money requested. Each time, by signing his application intended for submission and thereafter submitted to the financial institution, the defendant implicitly stated to the bank, in sum and substance, that he understood that the bank would use his application to approve the loan, that he intended for the bank to base its determination as to whether to approve the loan on that loan application, and that he intended to repay the loan himself, when in fact, he knew that he was unable to repay the loan himself, but intended to have his mother, Waunita Weingart, repay the loan.

### The October 10, 2007 Loan:

On or about October 10, 2007, the defendant, as sole borrower, signed an application for a loan in the amount of $465,500.00 to refinance his property located at

7603 California Ave. SW, Seattle, Washington, intending that the application be submitted to the lending bank. The loan was then submitted to the lender, Countrywide Bank FSB. Countrywide Bank FSB was an institution the accounts of which were insured by the Federal Deposit Insurance Corporation. The application was a 10-page document. The defendant signed each page except one; he initialed that page.

It is the government's position that the defendant had actual knowledge of the contents of this loan application and each of the applications described in this statement of facts, because he signed each page of each application, he worked with his mother at the real estate title business since at least 2003, and he stated in a sworn deposition taken in January 2009 that he typically reviewed documents before he signed them.

The defendant contends that he did not actually read the loan application for this October 2007 loan, or the others, and did not know their contents; rather, he signed the loan applications discussed herein at the request and advice of his mother, Waunita Weingart, whom he trusted to give him such advice, on the bases that she was his mother, that she was a mortgage broker with decades of experience in that field, that she advised the defendant that these loans were refinancings done merely to obtain better terms than the previous loan, and that these were "no income, no verification" loan applications.

It is further the government's position that if the defendant signed the applications without reading them, he deliberately blinded himself to the fact that there was a high probability that his applications contained false statements about his income and assets, and that he chose not to read the applications or otherwise acquire knowledge

of their specific contents in order to avoid having actual knowledge of the falsehoods they contained. The defendant was aware that he was not able to pay even one outstanding mortgage for any of his three properties.  The government bases this position on the following: At the time the defendant signed each of the loan applications described in this statement of facts:

1. He earned only approximately $2,000.00 per month, his annual income since 2002 had been only about $20,000 to $24,000, and he had no other income.

2. He owned three properties: 430 E. 6th Ave., Denver, Colorado 7603 California Ave. SW, Seattle, Washington, and 141 Lost Angel Road, Boulder, Colorado, each of which was encumbered by at least one 100% or nearly 100% mortgage;

3. Weingart or the companies she controlled paid his credit card bills, leased the jet plane he piloted, paid the expenses associated with the plane, and leased the vehicles he drove;

4. He had worked in the mortgage brokerage and the title insurance company offices run by his mother for years;

5. He had been a licensed real estate title producer in the State of Colorado since 1999.

The loan application stated, among other things, that the defendant was employed at TCS Transaction Coordination Services in Broomfield, Colorado, as an investor, that the type of business was real estate, and that his monthly income was

$31,500.00. *fn1* It also stated that his assets included a CD account with the value of $97,357.86 at American National Bank, and that his total assets (including real estate owned) had a value of $4,600,253.86. The Schedule of Real Estate Owned portion of his application listed the following parcels of real estate:

| | |
|---|---|
| 7603 California Ave. SW<br>Seattle, WA 98136-2141 | 2523 W. 45th Ave.<br>Seattle, WA 98105 |
| 777 Sunrise Pl.<br>Phoenix, AZ 85020 | 20 Whistler Pine Way<br>Vancouver BC |
| 575 Pennsylvania<br>Denver, CO 80203 | 571 Pennsylvania<br>Denver, CO 80203 |
| 569 Pennsylvania<br>Denver, CO 80203 | 563 Pennsylvania<br>Denver, CO 80203 |
| 561 Pennsylvania<br>Denver, CO 80203 | 1302 Sherman St.<br>Denver, CO 80203 |
| 1304 Sherman St.<br>Denver, CO 80203 | 430 E. 6th Ave.<br>Denver, CO 80203 |

In fact, the defendant's monthly income was only approximately $2,000.00, which the government contends he earned by working for his mother, Waunita Weingart, at her real estate title company and mortgage brokering office.

The defendant contends that he did not know which of the business entities his mother operated paid him for work that he did for his mother, and that he believed he shared in the profits of the businesses she ran because he was her son and had

---

1 Transaction Coordinator Services LLC was organized in 1998 by Waun Weingart as President and John Gallegos as Vice-President, and was frequently referred to as TCS.

assisted her in setting up some of those entities, and also because he did clerical work for her. The defendant agrees that his mother provided him with approximately $2,000 per month.

He had no CD account at American National Bank, and the total of the balances in his personal bank accounts was approximately $1,500.00.

Of the properties listed as being owned by the defendant, he only owned 7603 California Avenue SW, Seattle, Washington, (which was the property being refinanced), and 430 E. 6th Avenue, Denver, Colorado. The other 10 properties (all of which were listed on the application as rental properties) either did not exist or existed but were never owned by the defendant, as represented. He owned another property, 141 Lost Angel Road, Boulder, Colorado, which was encumbered, but was not listed on the Schedule of Real Estate Owned. He owned virtually no other assets, and the total value of his assets was substantially less than $4,600,253.86, as set forth on this application.

Based upon the information contained in the defendant's loan application, the bank loaned him $465,500.00.

The defendant defaulted on the loan on June 1, 2008, and as a result, the bank lost approximately $464,814.00.

### The April 11, 2005 Loan:

On April 11, 2005, the defendant, as sole borrower, signed an application for a loan in the amount of $359,000 to refinance the same property, 7603 California Ave. SW, Seattle, Washington, which he intended be submitted, and was submitted, to the lender, Washington Mutual Bank. Washington Mutual Bank was an institution the


accounts of which were secured by the Federal Deposit Insurance Corporation.

The information in that loan application concerning defendant's employment, income, assets, and real estate holdings, was false in ways similar to that in the October 2007 loan application. The application was a 5-page document, each page of which the defendant signed and/or initialed.

Based on the information contained in the defendant's loan application, the bank loaned him $359,000.00.

The defendant defaulted on this loan on June 1, 2008, and as a result, Washington Mutual Bank's successor in interest foreclosed on the property at 7603 California Avenue SW, Seattle, and sold it. That entity lost approximately $17,833.32.

### The January 23, 2008 Loan and Line of Credit:

On or about January 23, 2008, the defendant, as sole borrower, signed another application for a loan in the amount of $383,200.00 to refinance his property located at 7603 California Avenue SW, Seattle, Washington, which he intended be submitted, and was submitted to the lender, Bank of America. Bank of America was an institution the accounts of which were insured by the Federal Deposit Insurance Corporation. The application was a 7-page document, each page of which the defendant signed and/or initialed.

Information in that loan application concerning defendant's employment, income, assets, and real estate holdings was false in ways similar to that in the October 2007 loan application.

Based on the information contained in the Defendant's loan application, the Bank

of America loaned him $383,200.00.

Bank of America also issued a line of credit to the defendant in the amount of $100,000.00 on the same day. The bank authorized the line of credit on the basis of the application he had signed and submitted for the $383,200.00 loan. On February 19, 2008, the defendant issued two drafts drawn on this line of credit totaling $100,000.00. Both were honored by the bank. One draft was payable to John Gallegos and was deposited into his personal account at American National Bank; the other was payable to Waun Weingart and was deposited into her personal account at American National Bank. .

The defendant defaulted on the $383,200.00 loan on June 1, 2008, and on the $100,000.00 line of credit on June 13, 2008.As a result, Bank of America lost approximately $398,012.00 on the loan and $103,949.51 on the line of credit.

## VI.  ADVISORY GUIDELINE COMPUTATION AND SECTION 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. §3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

A. The base guideline is §1B1.1, with a base offense level of 7.

B. The loss was more than $400,000 but less than $1,000,000, warranting an upward adjustment of 14 pursuant to §2B1.1(b)(1)(H).

C. There are no victim-related, role-in-offense, obstruction, or multiple-count adjustments.

D. The adjusted offense level would therefore be 21.

E. The defendant should receive a 3-level downward adjustment pursuant to §3E1.1(b). The resulting offense level would therefore be 18.

F. The parties understand that the defendant's criminal history computation is tentative. The criminal history category is determined by the Court based on the defendant's prior convictions. Based on information currently available to the parties, it appears that the defendant has no criminal history, and therefore it is estimated that the defendant's criminal history category would be I.

G. The career offender/criminal livelihood/armed career criminal adjustments would not apply.

H. The advisory guideline range resulting from these calculations is 27-33 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level estimated above could conceivably result in a range from 27 months (bottom of Category I) to 71 months (top of Category VI) under the guideline range calculated by the parties. The guideline range would not exceed, in any case, the statutory maximum applicable to the count of conviction.

I. Pursuant to guideline § 5E1.2, assuming the estimated offense level

12

above, the fine range for this offense would be $6,000 to $60,000.

J.   Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term is at least 2 years, but not more than 5 years.

K.   Pursuant to § 5E1.1(a), the Court shall enter a restitution order in the full amount of the victims' losses, which the parties agree is approximately $984,618.35.

The parties understand that although the Court will consider the parties' estimate, the Court must make its own determination of the guideline range. In doing so, the Court is not bound by the position of any party.

The parties agree that no departures from the Sentencing Guidelines are warranted. The government agrees to seek a sentence within the guideline sentencing range found by the Court. The government agrees that it is proper for the Court to consider the defendant's health and medical condition under a §3553 analysis. The defendant will seek a variant sentence of time served under 18 U.S.C. §3553 factors.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. §3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the maximum period of 360 months established by the offense of conviction, regardless of any computation or position of any party on any 18 U.S.C. §3553 factor.

## VII.  ENTIRE AGREEMENT

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: 2/7/13

John Phillip Gallegos
Defendant

Date: 2/7/13

William L. Taylor
Attorney for Defendant

Date: 12/07/13

Darlene A. Bagley
Attorney for Defendant

Date: 2/11/13

Linda Kaufman
Assistant U.S. Attorney

Date: 2/11/13

Martha Paluch
Assistant U.S. Attorney

14