Exhibit A

1               IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLORADO
2
Criminal Action No. 11-CR-00355-MSK
3
UNITED STATES OF AMERICA,
4
    Plaintiff,
5
vs.
6
JOHN PHILLIP GALLEGOS,
7
    Defendant.
8 _____

9                **REPORTER'S TRANSCRIPT**
                  CHANGE OF PLEA
10 _____

11    Proceedings before the HONORABLE MARCIA S. KRIEGER,

12 Judge, United States District Court for the District of

13 Colorado, commencing at 10:04 a.m., on the 11th day of

14 February, 2013, in Courtroom A901, United States Courthouse,

15 Denver, Colorado.

16                   **APPEARANCES**

17    LINDA KAUFMAN and MARTHA PALUCH, Assistant U.S.

18 Attorneys, 1225 17th Street, Suite 700, Denver, Colorado,

19 80202, appearing for the Government.

20    WILLIAM TAYLOR and DARLENE BAGLEY, Attorneys at Law,

21 303 16th Street, Denver, Colorado, 80202, appearing for the

22 defendant.

23           THERESE LINDBLOM, Official Reporter
          901 19th Street, Denver, Colorado 80294
24    Proceedings Reported by Mechanical Stenography
         Transcription Produced via Computer

25

1                    **P R O C E E D I N G S**

2              *THE COURT:*  Court is convened today in Case No.

3    11-cr-355.  This is encaptioned for purposes of today's hearing

4    as the United States of America v. John Phillip Gallegos.  The

5    matter is set down for a change in plea.

6              Could I have entries of appearance, please.

7              *MS. KAUFMAN:*  Good morning.  Linda Kaufman for the

8    United States, and with me is co-counsel Martha Paluch.

9              *THE COURT:*  Good morning and welcome.

10             *MR. TAYLOR:*  Good morning, Your Honor.  William Taylor

11   and Darlene Bagley on behalf of John Phillip Gallegos, who is

12   present.  Good morning.

13             *THE COURT:*  Good morning and welcome.

14             Are you all ready to proceed?

15             *MR. TAYLOR:*  Yes, Your Honor.

16             *THE COURT:*  Thank you.

17             And how about for the Government?

18             *MS. KAUFMAN:*  We're prepared, Your Honor.

19             *THE COURT:*  Who is going to be standing with

20   Mr. Gallegos?

21             *MR. TAYLOR:*  I will.

22             *THE COURT:*  All right.  Mr. Taylor and Mr. Gallegos,

23   would you please approach the lectern.

24             This matter is before the Court for a change in the

25   defendant's plea, for rearraignment pursuant to Rule 10, and

1   for consideration of and advisement with regard to the parties'

2   plea agreement in accordance with Rule 11 both of the Rules of

3   Criminal Procedure.

4        The record reflects that the defendant was first

5   charged on August 31, 2011 in an Indictment filed that date.

6   He was charged in Counts 1, 2, 5, 6, 12, 13, and 15 of the

7   Indictment.  He entered a plea of not guilty to those charges.

8   I understand that pursuant to the terms of a written plea

9   agreement, he now intends to plead guilty to a single count in

10  an Information that charges violation of 18 U.S.C. Section

11  1014, and the Government intends to dismiss all of the counts

12  in the Indictment against him.  Is that correct?

13       *MS. KAUFMAN:*  That is correct, Your Honor.

14       *MR. TAYLOR:*  Yes, Your Honor.  That's correct.

15       *THE COURT:*  Thank you.

16       Ms. Kaufman, would you please rearraign on the

17  Information.

18       *MS. KAUFMAN:*  Yes, Your Honor.

19       We are in the United States District Court for the

20  District of Colorado in Case No. 11-cr-355-MSK, in the case of

21  United States of America v. John Phillip Gallegos.

22       Are you, sir, the John Phillip Gallegos named in the

23  Information?

24       *THE DEFENDANT:*  Yes, ma'am.

25       *MS. KAUFMAN:*  The Information reads as follows:

1  United States Attorney charges, Count 1:  On or about

2  October 10, 2007, in the District of Colorado and elsewhere,

3  the defendant, John Phillip Gallegos, for the purpose of

4  influencing Countrywide Bank FSB, an institution, the accounts

5  of which were insured by the Federal Deposit Insurance

6  Corporation, to loan him money, did knowingly make a false

7  statement to the bank, namely, by signing and submitting his

8  loan application to Countrywide Bank FSB, he made the false

9  statement that he intended for the institution to base its

10  determination as to whether to approve the loan on his

11  qualifications as set forth in the application on the premise

12  that he intended to repay the loan himself, when in fact he

13  knew that he was unable to repay the loan itself, but instead

14  intended to have his mother, W.W., repay it, all in violation

15  of Title 18 United States Code Section 1014.

16          How, sir, do you plead to this charge?

17          *THE DEFENDANT:*  Guilty.

18          *THE COURT:*  Thank you.

19          As of this moment, sir, you're not bound by your plea

20  of guilty.  Indeed, you're not bound by this plea until I

21  accept it.  You can change your mind at any point during the

22  hearing until I accept your plea.

23          In order to accept your plea, I have to be sure that

24  you understand the charges that have been brought against you,

25  you understand your choices and the consequences that flow from

1   those choices.  I have to be sure that your decision to plead

2   guilty is voluntary, and you haven't been pressured into it.  I

3   have to find that there is a factual basis for your plea.  And

4   because you are pleading guilty to an Information, I have to be

5   sure that you understand your right to be indicted and you are

6   voluntarily and knowingly waiving that right.

7          Throughout this hearing, I want you to let me know if

8   there is anything you don't understand or if you have any

9   questions.  And if you'd like to talk with Mr. Taylor or

10  Ms. Bagley at any time to ask them a question, just let me

11  know, and we'll take a brief recess so you can confer

12  privately.

13         I begin by asking you a number of questions.  The

14  questions are not intended to trap, embarrass, insult, or

15  offend you.  The questions are important because your answers

16  are important.  It's your answers that I assess in order to

17  determine whether I can accept your plea or not.  Therefore,

18  you must answer my questions truthfully and completely.

19  Indeed, just like a witness, you take a solemn oath promising

20  to tell the truth; and if you don't, your answers can be used

21  against you if an action is brought against you for false

22  statement or perjury.

23         Do you understand?

24         *THE DEFENDANT:*  Yes, Your Honor.

25         *THE COURT:*  Do you want to proceed?

1          *THE DEFENDANT:*  Yes.

2          *THE COURT:*  Would you please administer the oath.

3          (Defendant sworn.)

4          Mr. Gallegos, how old are you?

5          *THE DEFENDANT:*  41 years old, Your Honor.

6          *THE COURT:*  What level of school did you complete?

7          *THE DEFENDANT:*  High school diploma and online degree.

8          *THE COURT:*  Do you have any difficulty reading or

9   writing?

10          *THE DEFENDANT:*  No, ma'am -- no, Your Honor.

11          *THE COURT:*  Within the last 24 hours, have you taken

12   any medication?

13          *THE DEFENDANT:*  No, Your Honor.

14          *THE COURT:*  Within the last 24 hours, have you used

15   any drug or alcohol?

16          *THE DEFENDANT:*  No, Your Honor.

17          *THE COURT:*  To the best of your knowledge, have you

18   ever been diagnosed with a mental illness?

19          *THE DEFENDANT:*  No, Your Honor.

20          *THE COURT:*  Is there anything about the way you feel

21   today physically, emotionally, or mentally that makes it

22   difficult for you to understand what is happening?

23          *THE DEFENDANT:*  No, Your Honor.

24          *THE COURT:*  Have you read and do you understand the

25   charges against you in the Indictment?

1          *THE DEFENDANT:*  Yes, Your Honor.

2          *THE COURT:*  Have you discussed those with your

3     attorneys?

4          *THE DEFENDANT:*  Yes, Your Honor.

5          *THE COURT:*  Have you asked them all the questions you

6     had about those charges?

7          *THE DEFENDANT:*  Yes, Your Honor.

8          *THE COURT:*  Have they answered all of your questions?

9          *THE DEFENDANT:*  Yes, they have.

10         *THE COURT:*  Are there any other questions you want to

11    ask them?

12         *THE DEFENDANT:*  Not at this time, Your Honor.

13         *THE COURT:*  Thank you.

14         Mr. Taylor, can you identify the Information for the

15    record, please.

16         *MR. TAYLOR:*  Yes, Your Honor.  The Information

17    charging one count is marked as Court's Exhibit 3.

18         *THE COURT:*  Thank you.

19         Mr. Gallegos, would you please turn to Court Exhibit

20    3.

21         *THE DEFENDANT:*  Yes, Your Honor.

22         *THE COURT:*  Have you read this document?

23         *THE DEFENDANT:*  Yes, Your Honor.

24         *THE COURT:*  Have you discussed it with your attorneys?

25         *THE DEFENDANT:*  Yes, Your Honor.

1      *THE COURT:*  Have you asked them all the questions you

2  had about it?

3              *THE DEFENDANT:*  Yes, Your Honor.

4              *THE COURT:*  Have they answered all of your questions?

5              *THE DEFENDANT:*  Yes.

6              *THE COURT:*  Any other questions you want to ask them

7  about it?

8              *THE DEFENDANT:*  No, no, Your Honor.

9              *THE COURT:*  Now, this document is the document that

10  contains the charge that you just entered a plea of guilty to.

11              *THE DEFENDANT:*  Yes.

12              *THE COURT:*  And before I can accept that plea, I have

13  to be sure that you understand the difference between this

14  Information and an Indictment.  Have you discussed your right

15  to be indicted with your attorneys?

16              *THE DEFENDANT:*  Yes, Your Honor.

17              *THE COURT:*  Do you understand what it is?

18              *THE DEFENDANT:*  Yes.

19              *THE COURT:*  Just so that I'm sure you understand, let

20  me go over it with you.

21              *THE DEFENDANT:*  Okay.

22              *THE COURT:*  Under the United States Constitution, you

23  have a right to be indicted by a grand jury.  Now, a grand jury

24  is composed of at least 16 and not more than 23 people.  And in

25  order to charge you with a crime, at least 12 of those grand

1    jurors must agree that there is probable cause to believe you

2    committed a crime.  A grand jury might or might not indict you.

3    But an Information is a criminal charge that is brought against

4    you by the Government through the offices of the United States

5    Attorney, not through the grand jury.  And as a consequence, it

6    is both prepared and signed only by the attorney or attorneys

7    in the United States Attorney's Office.

8           Because you have a right to be indicted, to proceed on

9    an Information, you must give up that right to Indictment.  Do

10   you understand your right to be indicted?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  Do you wish to waive that right and

13   proceed on the Information?

14          THE DEFENDANT:  Yes, I wish to proceed on this.

15          THE COURT:  That's Exhibit 3 in front of you.

16          THE DEFENDANT:  Yes.

17          THE COURT:  Do you understand that if we proceed on

18   the Information, it will be treated just as if you had been

19   indicted?

20          THE DEFENDANT:  Yes.

21          THE COURT:  All right.  Mr. Taylor, have you discussed

22   and advised your client as to his right to be indicted?

23          MR. TAYLOR:  Yes, Your Honor.

24          THE COURT:  Are you satisfied he understands that

25   right?

1          MR. TAYLOR:  I am, Your Honor.

2          THE COURT:  And are you satisfied that he's knowingly

3    and voluntarily waiving it?

4          MR. TAYLOR:  I am, Your Honor.

5          THE COURT:  Thank you very much.

6          MR. TAYLOR:  You're welcome.

7          THE COURT:  Can you identify the plea agreement for

8    the record, please.

9          MR. TAYLOR:  The plea agreement of the parties is

10   identified as Court's Exhibit 1.

11         THE COURT:  Thank you.

12         And, Mr. Gallegos, would you please turn to Court

13   Exhibit 1.  Have you read this document?

14         THE DEFENDANT:  Yes, Your Honor.

15         THE COURT:  Have you discussed it with your attorneys?

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  Have you asked them all the questions you

18   had about it?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  Have they answered all of your questions?

21         THE DEFENDANT:  Yes, they have.

22         THE COURT:  Are there any other questions you want to

23   ask them?

24         THE DEFENDANT:  No, Your Honor.

25         THE COURT:  Now, there is a lot of legal language in

1    this document.  Do you understand what it says and what it

2    means?

3              THE DEFENDANT:  I've done my best to, yes, Your Honor.

4              THE COURT:  Well, this is the time that I have to make

5    sure you understand it all.  So if you have any reservations or

6    any questions, this is the time to bring them up with your

7    attorneys.  Is there anything you are unsure about?

8              THE DEFENDANT:  No, Your Honor.

9              THE COURT:  Does this reflect all of your agreement

10   with the Government?

11             THE DEFENDANT:  Yes.

12             THE COURT:  All right.  I'd like to bring two

13   particular provisions to your attention.  Would you please look

14   at page 2.  The third full paragraph on that page that starts

15   out, "the parties agree that the total restitution in this

16   case" -- do you see that paragraph?

17             THE DEFENDANT:  Yes, I do, Your Honor.

18             THE COURT:  Do you understand that you're agreeing

19   that the restitution here is approximately $984,618.35?

20             THE DEFENDANT:  Yes, Your Honor.

21             THE COURT:  Okay.  And would you go down two

22   paragraphs there that starts out -- still on page 2, "the

23   defendant is aware."  Do you see that paragraph?

24             THE DEFENDANT:  Yes.

25             THE COURT:  And if you read through that entire

1   paragraph, you'll note that you are giving up some very

2   important rights here.  In particular, you're giving up your

3   right to appeal from the sentence that is imposed in this case

4   except under limited circumstances, very limited circumstances.

5   You will not be able to appeal from the sentence that is

6   imposed here unless it exceeds the maximum penalty provided in

7   the statute of conviction; or in imposing sentence, the

8   sentence is a result of a departure or a variance upward from

9   the applicable sentencing guideline range; or in determining

10  the sentence, I find that the guideline offense level is

11  greater than 18.  Do you understand that?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  Okay.  And do you understand that you are

14  also giving up your right to bring a collateral attack against

15  this action, against the sentence, and against the judgment

16  that is entered?

17          THE DEFENDANT:  Yes.

18          THE COURT:  There are only three circumstances in

19  which you can do that, and that is where there is an explicitly

20  retroactive change in the applicable guidelines or sentencing

21  statute or if you contend that you were denied effective

22  assistance of counsel, or if you contend that there was

23  prosecutorial misconduct.  Do you understand that?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  Okay.  Now, these limitations, however,

1    are subject to another limitation, and that is, if the

2    Government appeals from the sentence that I impose, you no

3    longer have these waivers in place.  Do you understand that?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  Okay.  Any questions about that?

6              THE DEFENDANT:  No, Your Honor.

7              THE COURT:  Did you sign this agreement?

8              THE DEFENDANT:  Yes, I did, Your Honor.

9              THE COURT:  Would you look at the last page.  Is that

10   your signature there?

11             THE DEFENDANT:  Yes, it is, Your Honor.

12             THE COURT:  Thank you.

13             Mr. Taylor, does Exhibit 1 also bear your signature?

14             MR. TAYLOR:  Yes, Your Honor.

15             THE COURT:  Did you review the plea agreement with

16   Mr. Gallegos?

17             MR. TAYLOR:  Yes, Your Honor.

18             THE COURT:  Answer all of his questions?

19             MR. TAYLOR:  Yes, Your Honor.

20             THE COURT:  Are you satisfied that he understands the

21   contents of this document?

22             MR. TAYLOR:  I am, Your Honor.

23             THE COURT:  Thank you.  Did you review the discovery

24   in this case?

25             MR. TAYLOR:  Yes, Your Honor.

1      *THE COURT:*  And does it comport with the facts that

2   are recited in this plea agreement?

3           *MR. TAYLOR:*  It does, Your Honor.

4           *THE COURT:*  Thank you.

5           Ms. Kaufman, does this document bear your signature as

6   well?

7           *MS. KAUFMAN:*  It does, Your Honor.

8           *THE COURT:*  Thank you.

9           Mr. Gallegos, in this document is a recitation of

10  facts that the Government believes it could prove if this

11  matter were to go to trial.  By entering into this agreement,

12  you are admitting that these facts are true.  I'll treat them

13  as true, both for purposes of considering your plea and also

14  for purposes of sentencing.  Therefore, I'm going to ask

15  Ms. Kaufman to recite the facts that you have agreed to.  And

16  you must listen to what she says, because at the end of her

17  recitation, I'm going to confirm with you that these facts are

18  true.  You must let me know if you have any disagreement with

19  the facts as recited by Ms. Kaufman.  Do you understand?

20          *THE DEFENDANT:*  Yes, Your Honor.

21          *THE COURT:*  All right.  Ms. Kaufman, would you please

22  recite the facts on which the parties agree.

23          *MS. KAUFMAN:*  Yes.

24          First I'd like to begin by saying, the specific facts

25  are set forth in the plea agreement in its entirety as the

1    factual basis section.

2           Generally, the defendant between the dates of

3    April 2005 and January 2008 refinanced property that he owned

4    which was located at 7603 California Avenue Southwest, Seattle,

5    Washington, three times.  He obtained one line of credit.  Each

6    time he did that, he signed a loan application to be submitted

7    to a financial institution for the purpose of influencing it to

8    loan the money he had requested and each time by signing his

9    application, intended for submission and thereafter actually

10   submitted to the financial institution, he implicitly stated to

11   the bank in sum and substance that he understood that the bank

12   would use his application to approve the loan, that he intended

13   for the bank to base its determination on whether to approve

14   the loan on that application, and that he intended to repay the

15   loan itself, when in fact at the time he knew that he was

16   unable to pay the loan himself, but he intended to have his

17   mother, Waunita Weingart, repay the loan.

18          The particular loan which is the subject of the one

19   count is the October 10, 2007 loan.  He was the sole borrower

20   on that loan.  He signed the application for a loan in the

21   amount of $465,500 to refinance his property at the California

22   Avenue address, intending that it be submitted to the bank.  It

23   was, indeed, submitted to the bank, Countrywide Bank FSB, and

24   Countrywide was at the time an institution, the accounts of

25   which were insured by the Federal Deposit Insurance

1   Corporation.

2         The application that he signed -- and he signed each

3   page, except one, he initialed that page -- was a 10-page

4   document.

5         Our position in this is that he had actual knowledge

6   of the contents of the loan application and each of the

7   applications described in this Statement of Facts that I'm

8   reciting because he signed each page of each application, and

9   he worked with his mother at the real estate title business in

10  Colorado since at least 2003.  He stated in a sworn deposition

11  taken in January of 2009 that he typically reviewed documents

12  before he signed them.

13        It is the defendant's contention that he did not

14  actually read the loan application for this October 2007 loan

15  or any of the others and didn't know their contents.  Rather,

16  he signed the loan applications discussed in this Statement of

17  Facts at his mother's request and pursuant to her advice.  He

18  trusted her to give him such advice on the bases that she was

19  his mother, that she was a mortgage broker with decades of

20  experience in that field, and that she advised him that the

21  loan was for refinancing, done merely to obtain better loans

22  than the previous loan and that they were no income, no

23  verification loan applications.

24        If the Court finds that the defendant did not have

25  actual knowledge, it has been the Government's position that

the defendant signed these applications without reading them.
If he did, he deliberately blinded himself to the fact that
there was a high probability that his actions contained false
statements about his income and assets, and he chose not to
read the applications or otherwise acquire knowledge of the
specific content in order to avoid having actual knowledge of
the falsehoods they contained.  He was aware of the fact that
he was not able to pay even one outstanding mortgage for any of
his three properties.

The Government bases this position on the following:
At the time the defendant signed each loan -- each of the loan
applications described herein, one, he earned only
approximately $2,000 per month, which his annual income since
2002 had only been about 20,000 to 24,000 per year, and he had
no other income.  He owned three properties, those being 430
East Sixth Avenue, Denver, the subject property at California
Avenue Southwest, Seattle, Washington, and 141 Lost Angel Road
in Boulder, Colorado, each of which was encumbered by at least
on 100 percent or nearly 100 percent loan.

Ms. Weingart or the company she controlled paid his
credit card bills, leased the jet airplane that he piloted,
paid the expenses associated with the plane, and leased the
vehicles he drove.  He had worked in the mortgage brokerage
business and the title insurance company offices run by his
mother for years, and he had been a licensed real estate title

1    producer in the state of Colorado since 1999.

2            The loan application which is the subject of this

3    Information stated among other things that he was employed at

4    TCS, or Transaction Coordination Services, in Broomfield,

5    Colorado as an investigator, that the type of business was real

6    estate, and that his monthly income was $31,500.  That company

7    was organized in 1998 by Waun Weingart, his mother, as

8    president and him as vice president and was frequently referred

9    to as TCS.

10           It also stated that the application -- that his assets

11   included a CD account with the value of $97,357.86, located at

12   American National Bank, and that his total assets, including

13   real estate owned, had a value of $4,600,253.86.

14           The schedule of real estate portion of his application

15   listed the following portions of the -- parcels of real

16   estate -- and these are set forth in the document on page 8 in

17   a chart.

18           In fact, the defendant's monthly income was only about

19   $2,000 he earned working for his mother, Waun Weingart, in her

20   real estate company and mortgage brokerage office.  He contends

21   that he did not know which of the business entities his mother

22   operated paid him for the work he did for her, and that he

23   believed he shared in the profits of the businesses she ran

24   because he was her son and had assisted her in setting up some

25   of the entities and also because he did clerical work for her.

1      He agrees that his mother provided him about $2,000 a month.

2            In fact, despite what was stated on the application,

3      he had no CD account at American National Bank, and the total

4      of the balances in his personal bank accounts was approximately

5      $1,500 at the time.  Of all of the properties listed as being

6      owned by him on this application, he owned only the California

7      Avenue property and the 430 East Sixth Avenue property.  The

8      other ten properties, all of which were listed on the

9      application as rental properties, two per page, each page of

10     which he signed, either did not exist or existed, but were

11     never owned by the defendant as represented.

12           He in fact owned another property, that being Lost

13     Angel Road, Boulder, Colorado, which was encumbered but was not

14     listed on the schedule of real estate owned.  He owned

15     virtually no other assets in fact, and the total value of his

16     assets was therefore substantially than the $4.6 million set

17     forth in the application.

18           Based on the information contained in his loan

19     application, the bank loaned him $465,500.  He defaulted on the

20     loan on June 1, 2008; and as a result, the bank lost

21     approximately $464,814 as a result.

22           Also included in the factual basis are similar acts,

23     those being a loan that the defendant acquired on April 11,

24     2005, previous to the one which is the subject of the

25     Information.  On this one, again, sole borrower.  He signed an

1  application for loan in the amount of $359,000 to refinance the

2  same property, that being California Avenue, which he intended

3  to be submitted and which was in fact submitted to a different

4  lender, that being Washington Mutual Bank.  Washington Mutual

5  was an institution, the accounts of which were insured by the

6  Federal Deposit Insurance Corporation, and, therefore, a

7  financial institution.

8       The information on that loan application concerning

9  his employment, income, assets, real estate holdings was false

10  in ways very similar to those set forth in the October 2007

11  loan application.  This particular application was a five-page

12  document.  And, again, the defendant signed each page or

13  initialed each page.

14       Based on the information contained in his loan

15  application, the loan -- the bank loaned him $359,000.  He

16  defaulted on this loan on June 1, 2008.  And as a result, the

17  bank's successor in interest foreclosed on the property and

18  resold it, and the entity lost about 17,833.32.

19       Similarly, on January 23, 2008, the defendant obtained

20  both a loan and a line of credit as sole borrower from the Bank

21  of America, deposits of which were insured by the Federal

22  Deposit Insurance Corporation of America -- Federal Deposit

23  Insurance Corporation, excuse me.  The amount of the loan in

24  this instance was $383,200, and it was purported -- it was to

25  refinance his property at California Avenue.  The application

1    in this instance was a seven-page document, each page of which

2    the defendant signed and/or initialed.  The information in that

3    application, again, concerning his employment, income, assets,

4    and real estate holdings was false in ways very similar to that

5    in the October 2007 loan application.

6            Based on the information contained in this loan

7    application, the Bank of America loaned him as sole borrower

8    $383,200.  The bank issued a line of credit to him on the same

9    day in the amount of $100,000.  It authorized a line of credit

10   on the basis of the same application which he had submitted for

11   the loan.

12           On February 19, he actually issued two drafts drawn

13   against the line of credit totaling $100,000.  Both were

14   honored by the bank.  One was payable to him, deposited to his

15   personal account at American National Bank; the other was

16   payable to Waun Weingart, was deposited to her personal account

17   at American National Bank.  The defendant defaulted on both the

18   loan and the line of credit on June 13 -- excuse me, on June 1

19   and June 13, respectively.  As a result, the Bank of America

20   lost approximately $398,012 on the loan and $103,949 --

21   $103,949.51 on the line of credit.

22           Thank you.

23           THE COURT:  Thank you.

24           Mr. Gallegos, are these facts true?

25           THE DEFENDANT:  Yes, Your Honor.  Some -- I guess they

1    agree to disagree about some of the facts.

2           THE COURT:  I'm having a problem with that.  I want to

3    know what the false statement is that's an element of this

4    charge.  What is the false statement that was made in the loan

5    application?

6           MR. TAYLOR:  Do you want me to answer the question,

7    Your Honor?

8           THE COURT:  Please.

9           MR. TAYLOR:  Your Honor, the false statement was an

10   implicit statement to the bank at the time that he signed it

11   and had it submitted to the bank that he was the borrower, that

12   it was his resources that were going to be relied upon by the

13   bank as set forth in the loan application, that when in truth

14   and in fact, it was his mother, Waun Weingart, that was going

15   to be repaying the loan.  John, when he signed it, understood

16   that he was telling the bank that he was going to pay the loan

17   and be responsible for it.  She was not listed as co-borrower.

18   He did not believe that the bank knew she was a co-borrower or

19   be responsible, and intended that the bank believed that he had

20   promised to repay it, when in fact she would.

21          THE COURT:  Do you have case law for the proposition

22   that that constitutes a false statement?  Ordinarily a false

23   statement is a statement as to fact, not as to a promise; and

24   that sounds to me like a statement as to a promise.

25          MR. TAYLOR:  Your Honor, I don't have case law

1    concerning statements as to future intentions, but I think it

2    is a present fact, a present statement of intent, that is a

3    present fact.  He is representing himself as the borrower,

4    telling the bank that he understands that it is going to make

5    its decision based on this application which lists only him,

6    when in truth and in fact, he always intended that his mother

7    would repay, that she would be responsible, because he knew he

8    could not pay for any of it.

9              THE COURT:  Ms. Kaufman.

10             MS. KAUFMAN:  Your Honor, the parties discussed this

11   and referred and relied on the false statement to a bank

12   pattern criminal jury instruction, the case cited by the Tenth

13   Circuit in connection with that.  Specifically, the portion of

14   the instruction upon which we relied was the part that I will

15   read now.  It says, A statement may be spoken, written, or made

16   by other conduct that communicates a fact to another person.

17   And the case law that supports it is specifically set forth at

18   *United States v. Copus*, C-O-P-U-S, at 110 F.3d 1529, a Tenth

19   Circuit 1997 case.  And also *United States v. Bonnet*t, set

20   forth at 877 F.2d 1450, a Tenth Circuit 1989 case.

21             The -- and the cases cited within those cases go back

22   quite a long time to the 1800s, specifically, to a case called

23   *Rex v. Barnard*, cited at 173 Eng.Rep. 342, 1837.  The principle

24   is that in the Old English case, started with the idea that a

25   person who, in that case, wearing a cap and gown of an Oxford

1    student purposely produced the false impression to another

2    person that he was such a student when he was not, and on that

3    basis, obtained property on credit from the victim.

4         In this case, I think what we would focus on is the

5    fact that when the defendant signed the loan applications, when

6    he had them submitted to the lender, those acts, he was -- he

7    was making the verbal -- the statement to the bank, not through

8    words specifically or -- written or spoken words, but as the

9    instruction in this case has set forth, made by other conduct,

10   that communicates a fact to another person.  And in this case,

11   by signing and submitting these loan applications to the bank,

12   he was making the statement that he understood that the bank

13   would use and rely on this application to approve the loan that

14   he intended to be repaying it himself, when he knew in fact he

15   was unable to repay it himself and intended that his mother

16   would repay it.

17        The Government's position is that he was also aware of

18   the false statements in the application, as cited in the

19   factual basis, whether it be by actual knowledge or by

20   deliberate ignoring.

21        *THE COURT:*  I'm not satisfied.

22        The -- the case law that you just cited does, indeed,

23   stand for the proposition that you can make a statement as to

24   fact by a written or a verbal or a conduct type of statement.

25   I'm not satisfied that there is a statement here that the

1   defendant knew was false that was made as to repayment, because

2   I don't believe that is a fact.  It's a statement as to future

3   intent.

4           But I suspect that there is a statement at the end of

5   the loan application which reflects that the defendant

6   represented to the bank that he read the entirety of the loan

7   application and it was truthful and accurate information

8   contained in it.  Is there such a statement at the end of the

9   application?

10          MR. TAYLOR:  Yes, Your Honor, there is.

11          MS. KAUFMAN:  Yes, Your Honor.

12          THE COURT:  And is it the position of the defendant

13  that notwithstanding the statement that -- at the end of the

14  application, that he had read all of the information in the

15  application and that it was true and accurate, that it is his

16  position and statement today that he had not read all of the

17  information in the application and he had no idea whether it

18  was truthful and accurate?

19          MR. TAYLOR:  That's correct, Your Honor.

20          THE COURT:  Thank you.  I find that that is a false

21  statement.

22          MR. TAYLOR:  Very well.

23          THE COURT:  Sufficient to support the element of a

24  false statement.

25          Let me make sure, Mr. Gallegos, you understand what

1    your attorney just said.  Do you admit that you did not read

2    this application, you did not know whether the information was

3    truthful and accurate, even though you signed an application

4    saying that you had?

5             THE DEFENDANT:  That's correct, Your Honor.

6             THE COURT:  Thank you.  Let's talk, then, a little bit

7    about sentencing.

8             The maximum statutory penalty for a violation of 18

9    U.S.C. Section 1014 is 360 months of imprisonment, a $1 million

10   fine, both can be imposed.  A term of imprisonment may be

11   followed by up to 5 years of supervised release.  There is a

12   $100 special assessment fee which is mandated by statute, and

13   then there is an obligation to pay restitution.  And you've

14   stipulated to restitution in the amount of $984,618.35.

15            In the federal system, we measure terms of

16   imprisonment in terms of months, not years.  Unlike the state

17   system, there is no parole, and there is no automatic reduction

18   in a prison term.  There are a limited number of ways to reduce

19   a sentence, and some of those you have given up by the terms of

20   this plea agreement.

21            First, a reduction can come as a result of a

22   successful motion filed shortly after judgment is entered.

23   Second, a reduction in sentence can occur as a result of a

24   successful appeal and resentencing.  But, remember, you've

25   given up your right to appeal from the sentence imposed in this

1    case except under very limited circumstances.  Third, a

2    reduction in sentence can result from a successful collateral

3    attack against the action or the conviction or the judgment or

4    the sentence.  But, remember, by the terms of this agreement,

5    you've waived those rights as well except under very limited

6    circumstances.

7           And finally, the Bureau of Prisons has the discretion

8    to give you some credit against a prison term up to 54 days per

9    year for good time served.  It's their discretion.  They

10   determine whether you serve good time, which means that you

11   follow all of their rules and regulations, and they determine

12   whether and what amount of good time credit should be given.

13          Now, after completion of a prison term, there is a

14   term of supervised release that can be imposed, and that can be

15   up to five years of supervised release.  When you are on

16   supervised release, you are required to adhere to a number of

17   conditions that regulate your behavior, and a probation officer

18   is appointed to supervise you to make sure that you comply with

19   those conditions.

20          The conditions fall into two different groupings,

21   standard conditions and special conditions.  Standard

22   conditions apply to all terms of supervised release, and

23   special conditions are unique to you and to your particular

24   circumstances.  There are lots of standard conditions, as you

25   might guess; and I'm not going to recite all of the standard

1    conditions.  I'll bring three to your attention, but you should

2    understand that there are many more.

3              You cannot commit any new crimes, state, federal, or

4    local; you cannot use, sell, or possess any illegal substances;

5    and you cannot use, sell, or possess any prohibited firearms or

6    destructive devices.

7              With regard to special conditions, it's hard for me to

8    know at this juncture what special conditions might apply,

9    because I don't really know enough about you as a person and

10   what your needs are.  Special conditions usually are imposed in

11   order to assist you in avoiding the conduct that caused the

12   conviction in the first place, but they can address other

13   issues as well.  For example, if you have an issue with

14   alcohol, you may be required to go through alcohol

15   rehabilitation; if you have a mental health issue, you may be

16   required to go for mental health assessment and treatment; if

17   you have a drug issue, you may be required to go through

18   substance abuse treatment.  There may be restrictions imposed

19   related to this particular crime that prevent you from engaging

20   in certain transactions or activities in order to prevent it

21   from occurring again.

22             What is important to know about the terms and

23   conditions of supervised release is, they're all mandatory.

24   They're not optional.  That means you've got to follow all of

25   the conditions all of the time.  It's not good enough to just

1    try, and it's not good enough to follow some but not others.

2    What happens if you violate a condition, and if the violation

3    is significant enough, is that the probation officer, with the

4    U.S. attorney, can bring you back here to this courtroom or to

5    another courtroom and ask to have your supervised release term

6    revoked.  If it's revoked, you can be sent back to prison for

7    another term.

8         Now, the penalty that will be imposed here is not just

9    a function of the statute of conviction.  In deciding what

10   penalty is appropriate, I have to consider all of the factors

11   that are set out in another statute, 18 U.S.C. Section 3553.

12   That statute obligates me to impose a sentence that is

13   sufficient but not greater than necessary in order to satisfy

14   particular objectives.  So your sentence, like all other

15   sentences, must be sufficient but not greater than necessary to

16   promote respect for the law; provide just punishment;

17   adequately deter criminal conduct; protect the public from

18   further crimes by you; and provide you with needed educational

19   or vocational training, medical care, or other correctional

20   treatment in the most effective manner.

21        In order to fashion a sentence that meets these

22   objectives, the same statute tells me to consider a number of

23   factors:  The nature and circumstances of the offense; your

24   history and characteristics; the kinds of sentences that are

25   available; what the federal sentencing guidelines would

1    require; the need to avoid unwarranted sentence disparities

2    among defendants with similar records found guilty of similar

3    conduct; and in the appropriate case, the need for restitution.

4         I know that your attorney and the Government's

5    attorney have estimated the sentence that they believe will

6    apply here, and that estimate is contained in the plea

7    agreement, Exhibit 1.  I think you'll find it beginning at the

8    beginning -- at page 11.  It's entitled Advisory Guideline

9    Computation and Section 3553 Advisement.

10        There are several things that you need to know about

11   this portion of your plea agreement.  First of all, it's not

12   binding on your sentence.

13            THE DEFENDANT:  Yes, Your Honor.

14            THE COURT:  There is no guaranteed sentence here.

15   Secondly, this is an estimate based upon what the attorneys

16   knew at the time you entered into this plea agreement.  At the

17   time of sentencing, we will be working from a calculation under

18   the federal sentencing guidelines that is prepared by the

19   probation office of the Court.  In fact, you and your attorneys

20   will meet with the probation officer before sentencing and

21   answer certain questions that are necessary for preparation of

22   the presentence report.  You'll also have an opportunity to

23   review that report and advise the probation officer if you

24   think there is any error or mistake in it.

25        That report will contain a calculation under the

1    sentencing guidelines, and sometimes that calculation differs

2    from what is in the plea agreement.  Well, at the time of

3    sentencing, we won't be working from this agreement.  We'll be

4    working from the presentence investigation report.  So that is

5    why it is critically important for you to review that report

6    and discuss it with your attorney prior to sentencing.

7         THE DEFENDANT:  Yes, Your Honor.

8         THE COURT:  Finally, the federal sentencing guideline

9    calculation is only one factor that I consider in determining

10   your sentence.  That's because, as I said a minute ago, I have

11   to impose a sentence that meets the statutory objectives.  And

12   the calculation under the guidelines is only one factor that I

13   consider in making that determination.  It's an important

14   factor, but it's not the only factor.  It's a starting point,

15   but it's not necessarily the ending point.

16        If the calculation under the federal sentencing

17   guidelines doesn't yield a sentence that meets the sentencing

18   objectives, then I can impose a non-guideline sentence.

19   Sometimes people call that a variant sentence, sometimes they

20   call it a statutory sentence, but it all means the same thing.

21   It's a sentence outside the guideline range.  And that sentence

22   can be higher than lower than the guideline range or lower than

23   the guideline range, whatever is necessary in order to impose a

24   sentence that meets the sentencing objectives.

25        Now, your sentencing hearing will occur a number of

 1      weeks from now.  And as I said, before that hearing, you and

 2      your attorneys will meet with the probation officer, and you'll

 3      get an opportunity to review the report that is prepared by the

 4      probation officer.  Please don't be confused by the title

 5      "probation officer."  It doesn't have anything to do with the

 6      penalty to be imposed; it's just the title of the person

 7      preparing the report.

 8              At the time of sentencing, the attorneys will make an

 9      argument as to what sentence should be imposed.  You'll have an

10      opportunity to make a statement, but no one else may make a

11      statement on your behalf.  If there are other people you'd like

12      to have make a statement on your behalf, they may do so by

13      letter sent to the probation officer -- not to me, but to the

14      probation officer -- so that it can be attached to that

15      presentence investigation report which will be filed under

16      restricted access in CM/ECF.

17              Do you understand the objectives and factors that I'll

18      be evaluating in determining your sentence?

19              *THE DEFENDANT:*  Yes, Your Honor.

20              *THE COURT:*  Do you understand the maximum sentence

21      that can be imposed?

22              *THE DEFENDANT:*  Yes, Your Honor.

23              *THE COURT:*  Do you understand that you're pleading

24      guilty to a felony charge?

25              *THE DEFENDANT:*  Yes, Your Honor.

1          THE COURT:  Do you understand that this has certain

2     consequences.  It may result in you losing your civil rights,

3     your right to vote, hold public office, serve on a jury,

4     possess a firearm, or obtain -- or renew any number of

5     licenses.

6          THE DEFENDANT:  I understand, Your Honor.

7          THE COURT:  Do you understand that the sentence I

8     impose may be more severe than what is calculated in Exhibit 1?

9          THE DEFENDANT:  Yes, Your Honor.

10         THE COURT:  Do you understand that no matter what

11    sentence I impose, if I accept your plea today, you won't be

12    able to withdraw it at the time of sentencing?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  And do you understand that by virtue of

15    this agreement, you've given up your right to appeal from that

16    sentence except under very limited circumstances?

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  Do you have any questions about

19    sentencing?

20         THE DEFENDANT:  No, Your Honor.

21         THE COURT:  All right.  Mr. Taylor, could you identify

22    the statement in advance.

23         MR. TAYLOR:  Yes, Your Honor, it is marked as Court's

24    Exhibit 2.

25         THE COURT:  Thank you.

1          Mr. Gallegos, would you turn to Exhibit 2.  It should

2     be in front of you.

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  Do you see it there?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  Have you read this document?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Have you discussed it with your attorney?

9          THE DEFENDANT:  Yes, Your Honor.

10         THE COURT:  Have you asked him all the questions that

11    you had about it?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  Actually, I didn't include Ms. Bagley in

14    that, but maybe you talked with Ms. Bagley too.  Hopefully you

15    talked to Ms. Bagley too.

16         MR. TAYLOR:  He was outnumbered, Your Honor.

17         THE COURT:  Let me ask you, are there any other

18    questions you'd like to have answered at this point?

19         THE DEFENDANT:  No, Your Honor.

20         THE COURT:  Did you sign this document?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  Will you look at the end of the document,

23    please.  Is your signature there?

24         THE DEFENDANT:  Yes, I did sign it.

25         THE COURT:  All right.  Let's go over the

1    constitutional rights you're giving up today by making your

2    plea of guilty.

3         First and foremost, the Constitution guarantees to you

4    that you have the right to be indicted.  And we've discussed

5    that, and you've waived that right.  The Constitution also

6    guarantees to you the right to have charges such as this tried

7    to a jury in a jury trial.  And in a jury trial, which would

8    ordinarily take place in this courtroom, the jury sits over

9    there at my left.  You and your attorneys and the Government

10   attorneys get to participate in the selection of the people who

11   would serve on the jury and to exclude anybody who has such

12   extreme views that they can't be fair and impartial or they're

13   unwilling or unable to follow the law.

14        In addition, you get to excuse ten people, and the

15   Government gets to excuse six people without giving any reason

16   whatsoever.  Once the jurors are selected, they all take a

17   solemn oath promising to consider only the evidence presented

18   here in the courtroom and to follow the instructions that I

19   give them as to the law.  One of the instructions that I give

20   them tells them that they must reach a unanimous decision in

21   order to find you guilty of the charges brought against you.

22   If any one of them has a reasonable doubt as to your guilt, you

23   cannot be convicted.

24        You have yet another constitutional right during the

25   trial process, and that is the right to remain silent.  It

1    means that no one can ask you questions against your will, and

2    you cannot be forced to testify.  It means that the jury can't

3    consider the fact that you don't testify in determining whether

4    the Government has proven the charge or charges against you.

5    And it means that even though you remain silent, your attorneys

6    don't need to.  They get to cross-examine any witness, put on

7    witnesses, and challenge evidence, and make arguments to me and

8    arguments to the jury.

9             And that takes us to the next constitutional right,

10   which is your right to waive your right to remain silent.

11   Because it's a right, you can change your mind.  You can decide

12   to testify if you want to either before trial or during the

13   trial.  In addition, you can put on evidence and call witnesses

14   if you want to.  If there are witnesses that you would like to

15   have testify, and they're reluctant to come and testify, I

16   would compel them to do so.  And you have the right to be

17   represented by an attorney.  And where you can't afford an

18   attorney, one can be appointed for you without any cost to you.

19            Now, if you were to proceed to trial and you were to

20   be convicted, you could appeal from both your conviction and

21   your sentence.  But by entering your plea of guilty today,

22   there will be no trial.  You will not be able to appeal from

23   your conviction; and for the most part, you won't be able to

24   appeal from your sentence.

25            Do you understand that you're waiving your right to a

1    jury trial and other constitutional rights associated with it

2    if you proceed with this plea of guilty?

3              THE DEFENDANT:  Yes, Your Honor, I understand.

4              THE COURT:  Is that what you want to do?

5              THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  Has anybody pressured you to make this

7    plea today?  And before you respond, let me define "anybody."

8    It has the broadest definition possible.  It includes your

9    family, friends, neighbors, strangers, people you like, people

10   you don't like, people who like you, don't like you, people

11   here at the courthouse, law enforcement personnel, the

12   attorneys.  It includes anybody.  Has anybody pressured you to

13   enter this plea today?

14             THE DEFENDANT:  No, Your Honor.

15             THE COURT:  Has anybody promised you something that

16   isn't in the plea agreement?

17             THE DEFENDANT:  No, Your Honor.

18             THE COURT:  Have you had enough time to review and

19   consider and discuss your plea and plea agreement with your

20   attorneys?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  Are you satisfied with their

23   representation of you?

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  Do you have any concerns, complaints, or

1    criticism about the legal representation you've received?

2              THE DEFENDANT:  No, Your Honor.

3              THE COURT:  Do you want to ask your attorneys any

4    questions?

5              THE DEFENDANT:  No, Your Honor.

6              THE COURT:  Any questions for me?

7              THE DEFENDANT:  No, Your Honor.

8              THE COURT:  Well, then, now is the time to finalize

9    your decision.  This plea agreement, the one you and I have

10   been discussing, Exhibit 1, do you still want to proceed with

11   it?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  Do you still want to plead to guilty to

14   the charge in the Information?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  Mr. Taylor, any reason not to accept the

17   plea and plea agreement?

18             MR. TAYLOR:  No, Your Honor.

19             THE COURT:  Ms. Kaufman.

20             MS. KAUFMAN:  No, Your Honor.

21             May I also have a moment with defense counsel to

22   discuss a matter?

23             THE COURT:  Sure.

24             MS. KAUFMAN:  Thank you.

25             (Oft record discussion between counsel.)

1        *MS. KAUFMAN:*  Thank you, Your Honor.

2        *THE COURT:*  You're welcome.

3        *MS. KAUFMAN:*  No, Your Honor.

4        *THE COURT:*  Do either of you desire to supplement the

5   record?

6        *MR. TAYLOR:*  No, Your Honor.  Thank you.

7        *THE COURT:*  This plea agreement, Ms. Kaufman,

8   anticipates that the Government will move to dismiss all of the

9   counts in the Indictment against this defendant.  Are you

10  prepared to make that motion?

11       *MS. KAUFMAN:*  We are, Your Honor.  It also anticipates

12  something that I hadn't mentioned, and that is that he is by

13  this plea, waiving his right to contest venue.  And I think

14  that the case law would support by entering that plea that it's

15  true.

16       At this time I'd move to dismiss the following counts

17  in the Indictment against this defendant, those being Counts 1,

18  2, 5, 6, 12, 13, and 15, which are all of the counts against

19  the defendant in the Indictment.

20       *THE COURT:*  Does the count in the Information reflect

21  the actual -- the seriousness of the actual offense behavior?

22       *MS. KAUFMAN:*  It does, Your Honor.

23       *THE COURT:*  And if I were to accept this agreement,

24  would the statutory purposes of sentencing be undermined in any

25  fashion?

1             MS. KAUFMAN:  We don't believe so, Your Honor.

2             THE COURT:  Thank you.

3             Anything that you would like to add to that, Mr.

4    Taylor?

5             MR. TAYLOR:  Only that as to venue, we explained that

6    concept to Mr. Gallegos.  He understands objections based on

7    venue.  I don't think there is a problem, but to the extent

8    that there were, he would waive such objections.

9             THE COURT:  All right.  Mr. Gallegos, do you

10   understand what the attorneys are talking about as far as venue

11   is concerned?

12            THE DEFENDANT:  Yes, Your Honor.

13            THE COURT:  That's which court this action is brought

14   in.

15            THE DEFENDANT:  Yes.

16            THE COURT:  Do you consent to have this action brought

17   here in this court?

18            THE DEFENDANT:  Yes, Your Honor.

19            THE COURT:  Thank you.

20            Then based on the record made in open court today in

21   Case No. 11-cr-355, which is encaptioned for purposes of

22   today's hearing as the United States of America v. John Phillip

23   Gallegos, I hereby find that the defendant is fully competent

24   to enter an informed plea and to waive his right to be

25   indicted.  He's been represented through the course of this

1    case and this proceeding, and he has no objection, criticism or

2    complaint as to the representation he's received.  He's aware

3    of the nature of the charges against him and the effects and

4    consequences of his plea of guilty.  He has knowingly and

5    voluntarily waived fundamental constitutional rights, including

6    his right to be indicted and his right to a jury trial, and in

7    accordance with the terms of the plea agreement, severely

8    limited his right to appeal and his right to bring a collateral

9    attack.  He understands that the penalty to be imposed by the

10    Court will be based in part on the facts stated in the plea

11    agreement and may exceed the sentence calculated in it.  His

12    plea of guilty is voluntary and knowingly made, and the charge

13    and plea is supported by an independent basis in fact.

14        In accordance with the plea agreement, the Government

15    has orally moved to dismiss Counts 1, 2, 5, 6, 12, 13, and 15,

16    which are all of the counts brought against Mr. Gallegos in the

17    Indictment.  I find based upon the representation of Government

18    counsel that the charge in the Information adequately reflects

19    the seriousness of the actual offense behavior and that the

20    agreement does not undermine the statutory purposes of

21    sentencing.

22        It's therefore ordered that Court Exhibits 1, 2, and 3

23    are received, the plea as made in open court today is accepted,

24    and the defendant is adjudged guilty as charged in the

25    Information.

1           The motion to dismiss the counts in the Indictment is

2    granted, but the effect of this order is stayed until the time

3    of sentencing.

4           The Probation Department will conduct a presentence

5    investigation and submit a presentence report as required by

6    Rule 32.  The defendant with the assistance of counsel will

7    participate in the investigation and cooperate fully with the

8    Probation Department.

9           It looks like you all have set sentencing for May 6 at

10   9 o'clock.  Is that still going to work?

11           *MR. TAYLOR:*  Correct, Your Honor.

12           *MS. KAUFMAN:*  Yes, Your Honor.  Thank you.

13           *THE COURT:*  Okay.  That will be our sentencing date.

14           The trial against Mr. Gallegos was vacated upon the

15   filing of the notice of disposition.

16           With regard to motions, there are several that need to

17   be cleaned up at this time.

18           Docket No. 148, a motion for disclosure of defendant's

19   proffer regarding methodology used and applied as well as facts

20   and data required and considered by Robert Kullman.  That is a

21   motion actually brought by the defendant, even though it sort

22   of looks like it was brought by the Government, by the

23   docketing.  And then we have a second motion for a *Daubert*

24   hearing, that's Docket No. 160.  It's an amended joint motion

25   under Rule 702 that looks like it wasn't cleaned up at the time

 1   of our 702 hearing.

 2            Your pleasure.

 3            MR. TAYLOR:  I would suggest they be denied at this

 4   point as moot, Your Honor.

 5            THE COURT:  Any objection?

 6            MS. KAUFMAN:  No objection.

 7            THE COURT:  All right.  Then both are denied as moot.

 8   Any other matters that we need to take up?

 9            MS. KAUFMAN:  Not on behalf of the United States, Your

10   Honor.

11            MR. TAYLOR:  Nor from the defendant, Your Honor.

12            THE COURT:  Is there any objection to the defendant

13   remaining on bond subject to the conditions that have been

14   imposed?

15            MS. KAUFMAN:  Based on the information available to

16   the United States, no.

17            THE COURT:  Thank you.  Then those conditions will

18   remain in effect.  And I'll ask you, Mr. Gallegos, to please

19   check with your counsel shortly before the sentencing hearing.

20   It's really important that you be here for that sentencing

21   hearing.  If you're not here, the Government can request that I

22   issue a warrant for your arrest.  So confirm with them shortly

23   in advance of the hearing as to time and date.  That right now

24   is set in May.

25            Any further business by the defendant?

1          *MR. TAYLOR:*  No, thank you, Your Honor.

2          *THE COURT:*  Thank you, Ms. Kaufman; thank you, Mr.

3    Taylor, Ms. Bagley.

4          Mr. Gallegos, we'll see you in May.

5          And that will conclude this hearing.  We will stand in

6    recess.

7          (Recess at 11:01 a.m.)

8                    REPORTER'S CERTIFICATE

9

10      I certify that the foregoing is a correct transcript from
     the record of proceedings in the above-entitled matter.

11

12      Dated at Denver, Colorado, this 7th day of March, 2013.

13                              s/Therese Lindblom

14          _____

15                              Therese Lindblom,CSR,RMR,CRR

16

17

18

19

20

21

22

23

24

25