IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 11-cr-355-MSK

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.     WAUNITA WEINGART
2.     **JOHN PHILLIP GALLEGOS**
3.     ALOIS CRAIG WEINGART,

    Defendants.

---

**GOVERNMENT'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT (DOC. #244)**

---

    The United States of America, by United States Attorney John F. Walsh and Assistant United States Attorneys Linda Kaufman and Martha Paluch, hereby gives notice of its Objections to the Presentence Investigation Report. ("PSR").

    **Victim Impact / Restitution** (PSR Paragraphs 31, 92-95, Exhibit B)

    1. The parties have agreed that the total restitution in this case is approximately $984,618.35. (Doc. 215 at 2).All restitution in this case is based solely on the losses realized by the victims of Defendant John Gallegos' relevant conduct in connection with the loans he obtained to refinance his property at 7603 California Ave. SW, Seattle, Washington, as described in the Plea Agreement (Doc. 215 at 5-11). None of it relates to the charges against Mr. Gallegos in the original indictment, all of which the government moved to dismiss in accordance with the terms of the plea agreement.

    2. Upon further examination of its calculation of restitution, however, the government has concluded that the total should be reduced to $965,847.32 because a

1

portion of the $984,618.35 total included amounts beyond the unpaid principal which the government does not now seek as restitution. Accordingly, restitution should be paid as follows:

| | |
|---|---:|
| Bank of America<br>Regina R. Forest<br>Vice President, Investigative Services Manager<br>Corporate Security<br>201 N. Tryon St., 7th Floor<br>Mail Code NC1-022-07-11<br>Charlotte, NC 28255 | $948,014.00 |
| J.P. Morgan Chase Bank<br>c/o Jennifer Arney<br>7610 W. Washington<br>Indianapolis, IN 40231 | $17,833.32 |
| Total Restitution | $965,847.32 |

3. The restitution due to Bank of America is based upon the following:

   The October 10, 2007 loan: This loan was originally made by Countrywide Bank, FSB, which was acquired by Bank of America. The unpaid principal balance due to Bank of America is $464,814.00.

   The January 23, 2008 loan: This loan was originally made by Bank of America. The unpaid principal balance due to Bank of America is $383,200.00. The government has determined that its earlier loss calculation of $398,021.52 for this loan included costs, interest and fees, which the government does not now seek as restitution.

   The January 23, 2008 line of credit: This line of credit was funded by Bank of America in the amount of $100,000.00. The government has determined that its earlier loss calculation of $103,949.51 for this line of credit included costs, interest, and fees, which the government does not now seek as restitution.

4. The restitution due to J.P. Morgan Chase is based upon the following:

   The April 11, 2005 loan: This loan was originally made by Washington Mutual Bank. Its successor in interest was J.P. Morgan Chase Bank. J.P. Morgan Chase Bank foreclosed on the California Avenue property and resold the property for $366,000.00, which was $17,833.32 less than the

2

principal sum it was owed, $383,833.32. (Attachment 1).[1]

5. Exhibit B to the PSR is a Declaration of Victim Losses filed by Fidelity National Title Group. It claims $2,653,740.49 in the John Gallegos and Waunita Weingart cases. These losses are associated with claims it paid to insured lenders and expenses it incurred in connection with various loans made for the refinancing of 7766 Saxeborough Drive, Castle Rock, Colorado, 141 Lost Angel Road, Boulder, Colorado, and 430 East 6th Avenue, Denver, Colorado. None of these losses, however, is relevant to Defendant Gallegos' case, because his count of conviction relates only to his California Avenue property, and the restitution he has agreed to pay relates only to loans he obtained to refinance his California Avenue property. Mr. Gallegos should therefore not be ordered to pay any restitution to Fidelity National Title Group.[2]

**Specific Offense Characteristics:** (PSR Paragraph 37)

6. The victims in this case are Bank of America and J.P. Morgan Chase Bank, as explained above.

**Financial Condition: Ability to Pay** (PSR Paragraphs 69, 70)

7. Paragraph 69 does not address certain facts which would be helpful to the Court in determining the defendant's ability to pay restitution, and raises unanswered questions about his ability to pay that restitution.

---

[1] In Defendant John Gallegos' Objections to Presentence Investigation Report, he states that the $17,833.32 is owed to Fidelity. In fact, while Fidelity served as Trustee in the foreclosure proceeding, it did not pay a claim in connection with this loan, and did not realize a loss. J.P. Morgan Chase did.

[2] Fidelity, however, is a victim of co-defendant Waunita Weingart's offenses. (See Doc. 236 at 14, "Fidelity National Title Insurance Co."). The government will seek restitution for Fidelity in Ms. Weingart's case.

3

8. For example, Paragraph 69 states that the defendant has no unsecured debts, but does not state whether he has secured debts, and if so, what those debts are, and how they are being paid. Further, although this paragraph states that the defendant has only one unencumbered asset and no equity in other assets, it gives no insight as to what those other assets are.

9. For example, John Gallegos is the record title holder of 430 East 6th Avenue, Denver, Colorado and co-record title holder of 141 Lost Angel Road, Boulder, Colorado (with Waunita Weingart). (Attachments 2 and 3). These properties could potentially generate rental income. It is unclear from the PSR whether the defendant has ownership interests in other real properties which could also generate rental income.

10. Paragraph 70 of the PSR states that claims were "scheduled to be discharged" in the defendant's District of Arizona bankruptcy proceeding. In fact, the unsecured claims were discharged in 2010. (Attachments 4, 5). No creditors were listed as holding secured claims. (Attachment 6). The unsecured claims which were discharged included those relating to the defendant's Lost Angel and 6th Avenue properties.

11. A representative from Flagstar Bank informed government counsel this week that it has paid recent property taxes for 430 East 6th Avenue, Denver, Colorado, so that its interest in this property would not be subordinate to a tax lien. In addition, this representative indicated that Flagstar Bank intends to pursue a foreclosure action against the 6th Avenue property. Similarly, a representative from JP Morgan Chase informed government counsel this week that it has paid recent property taxes for 141

Lost Angel Road, Boulder, Colorado, so that its interest in this property would not be subordinate to a tax lien. This representative also indicated that JP Morgan Chase intends to pursue a foreclosure action against the Lost Angel Road property.

12. No foreclosure action has as yet been filed on either property. In any event, each of these lenders is likely to face significant title issues. (See, e.g., Attachment 7).

### Conditions of Supervised Release (PSR Paragraph 83)

13. The condition of supervised release suggested in this paragraph would prohibit the defendant from incurring new credit charges or opening additional lines of credit. This condition should be phrased to preclude the defendant from obtaining a loan of any type without the express approval of the supervising officer.

### 18 U.S.C. § 3553(a) Factors (PSR Paragraph 100, Page R-2)

14. These paragraphs note that it does not appear that the defendant now has anything financially to show for his involvement in the instant offense, but fail to note that several years have passed since his commission of the offense, and that he apparently spent the proceeds he received, as for example, the $50,000 deposited to his personal account from the $100,000 line of credit.(Doc. 215 at 11).

### Factual Basis (PSR Paragraphs 8-30)

15. The defendant requests that the factual basis set forth in the presentence report be replaced in its entirety with a portion of the transcript of the change of plea hearing. (Doc. 253 at 3). He now objects to any reliance on those stipulated facts, despite the fact that he agreed that they were true and relevant in the written plea agreement, and subsequently confirmed them to be true after hearing them read aloud at the hearing. (Doc. 253-1 at 15, 22-23).

16. At the change of plea hearing, the Court indicated that it was not satisfied with the factual basis for one element of the offense. As a result of the Court's inquiry, the record was expanded, as set forth in the transcript of the hearing. (Doc. 253-1).

17. Significantly, however, the Court did not state that as a result of this modification all other facts set forth in the plea agreement were to be disregarded. To the contrary, the Court clearly informed the defendant that by entering into the plea agreement, he was "admitting that these facts are true," and that the Court would "treat them as true, both for purposes of considering his plea and for purposes of sentencing." (Doc. 253-1 at 15). Near the end of the hearing, the defendant confirmed that he still wanted to proceed with the plea agreement, "Exhibit 1", and his counsel agreed that there was no reason not to accept the plea agreement. (Doc. 253-1 at 39 and Doc. 215). The Court found that the defendant understood that the penalty imposed by the Court would be based in part on the facts stated in the plea agreement. (Doc. 253-1 at 42).

18. Further, the use of the stipulated facts is consistent with the parties' agreement about the anticipated use of those facts in determining the advisory guidelines range, considering relevant conduct, and considering the other factors set forth in 18 U.S.C. § 3553 (Doc. 215 at 4), and the Court's Order Concerning Presentence Investigation and Report as to John Gallegos. (Doc. 217).

19. It is therefore proper to include the stipulated facts set forth in the plea agreement as part of the presentence report. The probation officer and the Court may rely on them, as well as other facts brought out at the change of plea hearing, for purposes of sentencing.

**The Defendant's Personal Data**

20. See Attachment 8 (Restricted-Level 2), which sets forth the government's position as to Exhibit C of the PSR.

Respectfully submitted,

JOHN F. WALSH
United States Attorney

By: *s/ Linda Kaufman*
Linda Kaufman
Assistant United States Attorney
1225 Seventeenth Street, Suite 700
Denver, Colorado 80202
Telephone: (303) 454-0100
Facsimile: (303) 454-0404
E-mail: Linda.Kaufman@usdoj.gov


By: *s/ Martha Paluch*
Martha Paluch
Assistant United States Attorney
1225 Seventeenth Street, Suite 700
Denver, Colorado 80202
Telephone: (303) 454-0100
Facsimile: (303) 454-0404
E-mail: Martha.Paluch@usdoj.gov

Attorneys for Government

# CERTIFICATE OF SERVICE

I certify that on this 18th day of April, 2013, I electronically filed the foregoing **GOVERNMENT'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT (DOC. #244)** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Martin Adam Stuart
E-mail: martinstuartlaw@solucian.com

William Lewis Taylor
E-mail: wltaylorpc@gmail.com

Darlene Ann Bagley
E-mail: bagley@ridleylaw.com

Paula M. Ray
E-mail: paulamray@earthlnk.net

and I hereby certify that I have mailed or served the document or paper to the following non-CM/ECF participants in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Nicole D. Peterson - U.S. Probation Officer
E-mail: Nicole_Peterson@cod.uscourts.gov

By: *s/ Solange Reigel*
SOLANGE REIGEL
Legal Assistant to AUSA Linda Kaufman
United States Attorney's Office
1225 - 17th Street, Suite 700
Denver, CO 80202
Telephone: (303) 454-0244
Fax: (303) 454-0402
E-mail: Solange.Reigel@usdoj.gov