# Exhibit D

## AFFIDAVIT OF MICHAEL E. MARTINEZ

United States District Court
District of Colorado

United States

v.

John Phillip Gallegos
Case No. 11-cr-00355-MSK-02

I, MICHAEL E. MARTINEZ, under penalty of perjury, state or affirm:

On December 29, 2000, I retired as the Deputy Chief United States Probation Officer for the District of Colorado. During my employment with the United States Probation Department, I served as a line officer, special offender specialist, supervisor and the last six plus years as the Deputy Chief. My duties as a line officer included preparing presentence investigation reports and supervision of offenders. As the District's special offender specialist, I supervised the District intensive supervision offender caseload, including special management offenders, high-risk offenders, organized crime offenders, high profile white-collar offenders, outlaw motorcycle gang offenders, and street gang offenders. I also completed presentence investigation reports on sophisticated and high profile defendants. As a supervisor, I supervised the District's Investigation Unit, reviewing and approving presentence investigation reports. I have written and or approved presentence investigation reports utilizing the federal sentencing guidelines. As the Deputy Chief, my primary responsibilities involved assisting the Chief Probation Officer in overseeing the operation of the Department.

Since March 2001, I have been employed by Investigative Resources Inc., as an investigator/consultant on issues related to the investigation and supervision of state and federal defendants/offenders. I have served as an advisory witness in federal court related to the investigation and supervision of offenders and defendants.

I am also a full time Senior Instructor and Director of the Bachelor of Arts in Criminal Justice program at the University of Colorado Colorado Springs, School of Public Affairs. My areas of teaching include Community and Institutional-based corrections, Ethics, Gangs and Criminal Organizations, and Violence in Society.

I reviewed Mr. Gallegos' presentence investigation report, including factors that may warrant departure and factors to be considered in imposing as sentence, pursuant to 18 U.S.C. §3553(a).

Michael Martinez
Affidavit
Page 2

Mr. Gallegos was released on an unsecured bond on September 2, 2011, with pretrial supervision, including a condition that he was allowed to travel within the United States. On September 29, 2011, Mr. Gallegos appeared before Magistrate Judge Kristen L. Mix. Mr. Gallegos' bond was continued with the additional condition that he surrender his pilot's license and/or any other related commercial license. According to the presentence investigation report, Mr. Gallegos has remained compliant and responsive with all bond conditions. Accordingly, his presentence rehabilitative efforts have remained positive and he has posed no threat to the community.

In addressing sentencing issues, the probation officer as noted in the presentence investigation report recommends that the Court impose a guideline sentence of 27 months. The probation officer's justification includes a statement that the "Officer is recommending a sentence at the low end of the advisory guideline range; however, based on the defendant's lack of any prior criminal history, education, and full-time employment, it appears that a variant sentence may be warranted."

The probation officer also notes at page 17, paragraph 101, "The defendant has no criminal history. He has a college degree and the ability to maintain employment. It does not appear that he has any institutional needs."

The Bureau of Justice Statistics reports that a majority of prisoners are men, members of minority groups, and convicted of violent crimes.[1]

The Bureau of Justice Statistics also reports that the rate of prisoner on prisoner assaults in U.S. prisons is 28 attacks per 1,000 inmates.[2] This statistic may not reflect the true amount of violence because many inmates who are assaulted do not make their victimization known to prison authorities.

It was my experience in serving as a liaison with the Federal Bureau of Prisons during my employment with the United States Probation Department, District of Colorado, that new inmates arriving at federal facilities were quickly approached by other inmates and instructed to show their presentence investigation report. The request, if not complied with could lead to violent attacks against the inmate. The request to view the inmate's presentence report was to assure that the inmate did not assist or cooperate with the government in the prosecution of others and to know of the offense conduct. Inmates in viewing the inmate's report also became aware of the background and characteristics of incoming inmates.

---

[1] West, Sabol, and Greenman, *Prisoners in 2009*.
[2] Stephan and Karberg, *Census of State and Federal Correctional Facilities*, 2000, p. 10

A major concern with Mr. Gallegos' receiving a sentence to the custody of the Federal Bureau of Prisons is the fact that he may quickly become the target of violence by other inmates. The presentence investigation report at page 10, paragraph 55 notes, "The defendant indicated that he has no history of mental or emotional problems, and no history of treatment for such problems. However, the defendant reported that his mother sent him to a counselor on one occasion after he informed her that he was a **Homosexual.**" This information if made available to other inmates could result in Mr. Gallegos becoming a target of sexual abuse.

Mr. Gallegos will be 43 years old later this month. He has never experienced a term of imprisonment and faces at the lower end of the guideline range 27 months. Should Mr. Gallegos be committed to the custody of the Federal Bureau of Prisons, he will likely be viewed as a situational offender and special offender because of his sexual preference. His involvement in this case is a clear deviation from his otherwise lawful behavior. He would pose little if any problems to correctional authorities based on his background, yet prison authorities would need to maintain almost constant contact with Mr. Gallegos in order to assure his safety, given his sexual preference.

One avenue Mr. Gallegos would have to assure his protection against other inmates while imprisoned is to pay fellow inmates for protection. Failure to pay for protection assures he would be vulnerable to attack by other inmates, if he were placed in general population.

Inmates who fear the possibility of violence, including sexual assaults may also request removal from general population and placement in a Special Housing Unit (SHU). Inmates who request placement in a SHU may have been victims of violence, or perceive they will be victimized.

Inmates in SHU are segregated from the inmate population and are usually confined to their cell for 23 hours a day. They are usually allowed out of their cell to exercise and/or shower. Inmates who request placement in a SHU are treated no differently than inmates who are placed in SHU at the direction of prison administration due to misbehavior or violent behavior toward correctional authorities or other inmates. Placement in SHU also limits programming resources available to inmates in general population.

Inmates requesting placement in a SHU have little if any chance of being released to general population. These inmates are often viewed as weak by other inmates. Even if an inmate is transferred to another facility, their reputation follows them through the "prison grapevine."

Michael Martinez
Affidavit
Page 4

As noted in the presentence investigation report, the most recent advisory from the Administrative Office of the United States Courts, dated April 10, 2012, lists the monthly cost of imprisonment as $2,407.78 or $28,893.36 yearly. There is little research on costs of confinement based on potential medical needs. Research estimates in the State of California indicate that inmates with special medical needs costs approximate $86,000 per inmate per year. This would result in an estimated cost of $193,499 based on specific medical needs over a 27-month term. I have attempted to obtain information directly from the Federal Bureau of Prisons on the yearly cost of inmates with special medical needs, however, as of this date have not received a response. As noted in the advisory, the monthly cost of community confinement is $2,180.27, and the monthly cost of supervision is $286.11 or $3,433.32 yearly. Treatment needs can best be addressed in the community and at a less costly rate.

As noted in the presentence investigation report, Mr. Gallegos has nothing financially to show for his involvement in the instant offense and it is unlikely that he will participate in any future criminal activity. Additionally, he has a significant amount of restitution to pay and a lengthy prison sentence will delay payments to his victims. The presentence report does not apply a leadership role to Mr. Gallegos' involvement in this case. According to his employment as noted in the presentence investigation report, Mr. Gallegos was employed by his mother from 1999 to 2008. It was during this time the offense conduct occurred. It is unclear from the report whether Mr. Gallegos acted on behalf of or at the direction of his mother and stepfather, or whether his mother and stepfather reaped most of the financial gain.

The court, in determining the particular sentence to be imposed, shall consider the nature and circumstances of the offense and the history and characteristics of the defendant. In addition, 18 U.S.C. § 3553(a) requires that the sentence: (a) reflects the seriousness of the offenses, promotes respect for the law, and provides just punishment for the offense; (b) affords adequate deterrence to criminal conduct; (c) protects the public from further crimes of the defendant; and (d) provides the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. The sentence imposed must also consider the need to provide restitution. Restitution as noted in the presentence investigation report is estimated at $984,618.35.

Michael Martinez
Affidavit
Page 5

Imposing a variant sentence of time served and placing Mr. Mr. Gallegos on 5-years supervised release will allow him to immediately begin paying restitution. It is unlikely he will be able to meet the restitution obligation within 5-years. The government pursuant to Title 18, U.S.C. § 3613, can pursue collection of restitution for a period of 20 years, from the date of judgment. Should Mr. Gallegos be sentenced to the custody of the Federal Bureau of Prisons, he would likely be asked to participate in the Inmate Financial Responsibility program. The small amount of income he would earn working in one of the Bureau's facilities, possibly less than a $1 a day, would be set aside for payment of restitution.

As noted in the presentence investigation report, Mr. Gallegos is a first time offender and is highly unlikely or recidivate. He has a well paying job, one he would lose if incarcerated. A sentence to time served with a 5-year term of supervised release provides adequate deterrence, promotes respect for the law, and allow for an immediate restitution plan.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 22, 2013, at Denver, Colorado.

_Michael E. Martinez_

State of Colorado    )
                     ) ss
County of Denver     )

Then appeared on April 22, 2013, the above-named Michael Martinez, who is personally known to me, and swore to the truth of the statements contained in the foregoing Affidavit.

Notary Public 1625 Marion #903 Denver CO 80203
Printed Name: MADELYN HENETZ
My commission expires 3-10-2013