OMB No. 2502-026

| A. | U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT SETTLEMENT STATEMENT | B. TYPE OF LOAN |
|---|---|---|
| | | 1. ☐ FHA   2. ☐ FMHA   3. ☐ CONV. UNINS. |
| | | 4. ☐ VA    5. ☒ CONV. INS. |
| | | 6. FILE NUMBER: 24240J   7. LOAN NUMBER: 1400000102 |
| | | 8. MORTGAGE INS. CASE NO.: |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

D. NAME & ADDRESS OF BORROWER: John Gallegos  141 Lost Angel Road, Boulder, CO 80302-9743

E. NAME & ADDRESS OF SELLER: Geraint E.D. Owen and Susannah K. Owen  7603 California Ave S W, Seattle, WA 98136

F. NAME AND ADDRESS OF LENDER: Resource Bank  2901 S. Lynnhaven Road #401, Virginia Beach, VA 23452

G. PROPERTY LOCATION: 7603 California Ave S W, Seattle, WA 98136
H. SETTLEMENT AGENT: Admiral Escrow, Inc.
   PLACE OF SETTLEMENT: 4700 42nd Ave S W, Suite 620, Seattle, WA 98116  (206)933-3001
I. SETTLEMENT DATE: 7/20/2001                                       ESTIMATED

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due From Borrower:** | | **400. Gross Amount Due to Seller:** | |
| 101. Contract sales price | 375,000.00 | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 6,183.34 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| *Adjustments For Items Paid By Seller In Advance:* | | *Adjustments For Items Paid By Seller In Advance:* | |
| 106. City/town taxes      to | | 406. City/town taxes      to | |
| 107. County taxes         to | | 407. County taxes         to | |
| 108. Assessments          to | | 408. Assessments          to | |
| 109. Wire fee to Admiral Escrow | 20.00 | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. Gross Amount Due From Borrower:** | **381,203.34** | **420. Gross Amount Due to Seller:** | |
| **200. Amounts Paid By Or In Behalf Of Borrower:** | | **500. Reductions In Amount Due To Seller:** | |
| 201. Deposit or earnest money | 5,000.00 | 501. Excess deposit (see Instructions) | |
| 202. Principal amount of new loan(s) | 337,500.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. ADDITIONAL DEPOSITS | 38,432.34 | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| *Adjustments For Items Unpaid By Seller:* | | *Adjustments For Items Unpaid By Seller:* | |
| 210. City/town taxes      to | | 510. City/town taxes      to | |
| 211. County taxes  1/01 to 7/20/01 | 186.62 | 511. County taxes         to | |
| 212. Assessments          to | | 512. Assessments          to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid By/For Borrower:** | **381,118.96** | **520. Total Reductions In Amount Due Seller:** | |
| **300. Cash At Settlement From/To Borrower:** | | **600. Cash At Settlement To/From Seller:** | |
| 301. Gross amount due from borrower (line 120) | 381,203.34 | 601. Gross amount due to seller (line 420) | |
| 302. Less amount paid by/for borrower (line 220) | 381,118.96 | 602. Less reductions in amount due seller (line 520) | |
| **303. Cash (☒ FROM)(☐ TO) Borrower:** | **84.38** | **603. Cash (☐ TO)(☐ FROM) Seller:** | |

**ATTACHMENT 2**

Previous Edition is Obsolete
Form No. 1581
3/86                                    Page 1 of 3

SB-4-3538-000-1
HUD-1 (3-86)
RESPA, HB 4305.2

00026278

Escrow No.: 24240J

## L. SETTLEMENT CHARGES

| | Paid From Borrower's Funds At Settlement | Paid From Seller's Funds At Settlement |
|---|---|---|
| 700. Total Sales/Broker's Commission Based On Price $ @ %= | | |
| Division of Commission (line 700) As Follows: | | |
| 701. $ to | | |
| 702. $ to | | |
| 703. Commission paid at settlement | | |
| 704. | | |
| **800. Items Payable In Connection with Loan:** | | |
| 801. Loan Origination fee | | |
| 802. Loan Discount % | | |
| 803. Appraisal Fee to G-4 HOLDING | 400.00 | |
| 804. Credit Report to: G-4 HOLDING | 25.00 | |
| 805. Lender's Inspection fee | | |
| 806. Mortgage Insurance application fee to | | |
| 807. Assumption fee | | |
| 808. Tax Registration TO Resource Bank | 83.00 | |
| 809. Flood Determination TO FDSI | 25.00 | |
| 810. Document Review TO Resource Bank | 275.00 | |
| 811. LENDERS INSPECTION FEE TO Resource Bank | 75.00 | |
| PORTFOLIO REVIEW TO Resource Bank | 100.00 | |
| UNDERWRITING TO Resource Bank | 150.00 | |
| Processing fee TO G-4 HOLDING | 300.00 | |
| **900. Items Required By Lender To Be Paid In Advance:** | | |
| 901. Interest from 7/19/01 to 8/01/01 @$ 84.3750 /day | 1,096.88 | |
| 902. Mortgage insurance premium for 0 mo. to Resource Bank | 365.63 | |
| 903. Hazard insurance premium for yrs. to Farmers Insurance | 195.55 | |
| 904. Flood insurance premium for yrs. to | | |
| 905. | | |
| **1000. Reserves Deposited With Lender:** | | |
| 1001. Hazard Insurance months @$ 41.04 per month | 164.16 | |
| 1002. Mortgage insurance months @$ per month | | |
| 1003. City property taxes months @$ per month | | |
| 1004. County property taxes 5 months @$ 298.78 per month | 1,493.90 | |
| 1005. Annual assessments months @$ per month | | |
| 1006. Flood Insurance months @$ per month | | |
| 1007. months @$ per month | | |
| Aggregate Adjustment Amount | (7.16) | |
| **1100. Title Charges** | | |
| 1101. Settlement or closing fee to Admiral Escrow, Inc. | 587.52 | |
| 1102. Abstract or title search to ESCROW FEE: $1,080.00 SALES TAX: $ 95.04 | | |
| 1103. Title examination to | | |
| 1104. Title insurance binder to | | |
| 1105. Document preparation to | | |
| 1106. Notary fees to | | |
| 1107. Attorney's fees to | | |
| (includes above items Numbers: ) | | |
| 1108. Title insurance to Fidelity National Title Company of Washington | 524.42 | |
| (includes above items Numbers: ) | | |
| 1109. Lender's coverage $ 337,500.00 Premium: 482.00 Tax: 42.42 | | |
| 1110. Owner's coverage $ 375,000.00 Premium: 948.00 Tax: 83.42 | | |
| 1111. Courier fee to Admiral Escrow | 30.00 | |
| 1112. Courier fee to Admiral Escrow | | |
| 1113. Wire fee to Admiral Escrow - T | 1.76 | |
| **1200. Government Recording and Transfer Charges:** | | |
| 1201. Recording fees: Deed $ Mortgage $ Releases $ | 38.00 | |
| 1202. City/county tax/stamps: Deed $ Mortgage $ | | |
| 1203. State tax/stamps: Deed $ Mortgage $ | | |
| 1204. | | |
| 1205. | | |
| **1300. Additional Settlement Charges:** | | |
| 1301. Survey to | | |
| 1302. Pest Inspection to | | |
| 1303. | | |
| 1304. | | |
| 1305. | | |
| 1306. | | |
| 1307. | | |
| **1400. Total Settlement Charges** (Enter on line 103, Section J - and - line 502, Section K) | 6,183.34 | |

Form No. 1582   Page 2 of 3   6B-4-3638-000-1

00026279

Escrow No.: 24240J

## SELLER'S AND/OR BORROWER'S STATEMENT

SETTLEMENT DATE: 7/20/2001

The Seller's and Borrower's signatures hereon acknowledge their approval and signify their understanding that tax and insurance prorations and reserves are based on figures for the preceding year or supplied by others or estimated for the current year, and in the event of any change for the current year, all necessary adjustments will be made between Borrower and Seller directly. Any deficit in delinquent taxes or mortgage payoffs will be promptly reimbursed to the Settlement Agent by the Seller.

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

I hereby authorize the Settlement Agent to make expenditures and disbursements as shown above and approve same for payment.

Borrowers/Purchasers _[signature]_
John Gallegos

Sellers

The HUD-1 Settlement Statement which I have prepared is a true and accurate amount of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Settlement Agent: _[signature]_ Susan Yelle, Admiral Escrow, Inc. Date: 7/19/01

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine or imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

3

Page 3 of 3

00026280

## Resource Mortgage

### HUD ADDENDUM

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

_his attorney in fact_

_____     _Geraint ED Owe by Susannah Owe_
JOHN GALLEGOS                                       GERAINT E. D. OWEN
                                                    SUSANNAH K. OWEN
                                                    Sellers

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused the funds to be disbursed in accordance with this statement.

_____     19 9?
Settlement Agent                 07/18/01
                                 Date

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

rhm 1/01

4

00026282



20021227000477
FIRST AMERICAN DT
PAGE 001 OF 015   33.00
12/27/2002 10:08
KING COUNTY, WA

After Recording Return To
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
1800 Tapo Canyon
Simi Valley, CA 93063-6712

Assessor's Parcel or Account Number. 923890 0840
Abbreviated Legal Description
LOT 10, BLK 9, WELLINGTON
PARK ADD TO THE CITY OF
SEATTLE VOL 16 PAGE 93
[Include lot, block and plat or section, township and range]

Full legal description located on page 3

Trustee
LS TITLE OF WASHINGTON

63686
1ST AM. 13/33

[Space Above This Line For Recording Data]

0002195465655092
[Doc ID #]

# DEED OF TRUST

MIN 1000157-0001831683-2

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21 Certain rules regarding the usage of words used in this document are also provided in Section 16

(A) "Security Instrument" means this document, which is dated DECEMBER 13, 2002 , together with all Riders to this document.
(B) "Borrower" is
JOHN GALLEGOS, A SINGLE MAN

Borrower is the trustor under this Security Instrument
(C) "Lender" is
COUNTRYWIDE HOME LOANS, INC.
Lender is a CORPORATION
organized and existing under the laws of NEW YORK

WASHINGTON-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Page 1 of 11      Initials
-6A(WA) (0012)   CHL (12/00)   VMP MORTGAGE FORMS - (800)521-7291      Form 3048 1/01
CONV/VA




5

00028112

DOC ID # 0002195465655092

Lender's address is
4500 Park Granada, Calabasas, CA 91302-1613

(D) "Trustee" is
LS TITLE OF WASHINGTON
2707 COLBY AVE SUITE 1118 EVERETT, WA 98201-

(E) "MERS" is Mortgage Electronic Registration Systems, Inc MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P O Box 2026, Flint, MI 48501-2026, tel (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated DECEMBER 13, 2002    The Note states that Borrower owes Lender
THREE HUNDRED SIXTY THOUSAND and 00/100
Dollars (U S $   360,000.00   ) plus interest Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than JANUARY 01, 2033

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower The following Riders are to be executed by Borrower [check box as applicable].

[X] Adjustable Rate Rider   [ ] Condominium Rider              [ ] Second Home Rider
[ ] Balloon Rider           [ ] Planned Unit Development Rider [ ] 1-4 Family Rider
[ ] VA Rider                [ ] Biweekly Payment Rider         [ ] Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C Section 2601 et seq.) and its implementing regulation, Regulation X (24 C F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY                          of KING
[Type of Recording Jurisdiction]       [Name of Recording Jurisdiction]

Initials: [signature]

-6A(WA) (0012)    CHL (12/00)    Page 2 of 11    Form 3048 1/01

00028113

DOC ID # 0002195465655092

LOT 10 IN BLOCK 9 OF WELLINGTON PARK ADDITION TO THE CITY OF SEATTLE ACCORDING TO PLAT RECORDED IN VOLUME 16 OF PLATS AT PAGE 93 IN KING COUNTY WASHINGTON

which currently has the address of
7603 CALIFORNIA AVE, SEATTLE
[Street/City]
Washington 98136- ("Property Address")
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash, (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note, (b) principal due under the Note, (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the

Initials: [signature]

-6A(WA) (0012)   CHL (12/00)   Page 3 of 11   Form 3048 1/01

00028114

DOC ID # 0002195465655092

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider

_______________________________ (Seal)
JOHN GALLEGOS - Borrower

_______________________________ (Seal)
- Borrower

_______________________________ (Seal)
- Borrower

_______________________________ (Seal)
- Borrower

CONV
2U6524XX (04/01) Page 4 of 4

Initials ______

8

OMB NO. 2502-0265

**A. U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT**
**SETTLEMENT STATEMENT**
Estimated

**B. TYPE OF LOAN**
1. ☐ FHA  2. ☐ FmHA  3. ☒ CONV. UNINS.  4. ☐ VA  5. ☐ CONV. INS.
6. FILE NUMBER: 058087
7. LOAN NUMBER: 01-0988-069040218-5
8. MORTGAGE INS CASE NUMBER

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(POC)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

**D. NAME AND ADDRESS OF BORROWER**
John Phillip Gallegos
7603 California Ave SW
Seattle, WA 98136

**E. NAME AND ADDRESS OF SELLER**
HUD1

**F. NAME AND ADDRESS OF LENDER**
Washington Mutual Bank
3060 139th Ave SE 2nd Floore
Bellevue, WA 98005

*CERTIFIED COPY OF THE ORIGINAL*

**G. PROPERTY LOCATION**
7603 California Avenue Southwest
Seattle, WA 98136
King County, Washington

**H. SETTLEMENT AGENT**
Sharon E Best Escrow

**PLACE OF SETTLEMENT**
3909 California Ave SW
Seattle, WA 98116

**I. SETTLEMENT DATE**
April 15, 2005

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| 100. GROSS AMOUNT DUE FROM BORROWER: | | 400. GROSS AMOUNT DUE TO SELLER: | |
| 101. Contract Sales Price | | 401. Contract Sales Price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Borrower (Line 1400) | 7,974.92 | 403. | |
| 104. Payoff thru 4/19 to Countrywide/21954656-1 | 352,544.28 | 404. | |
| 105. | | 405. | |
| Adjustments For Items Paid By Seller in advance | | Adjustments For Items Paid By Seller in advance | |
| 106. City/Town Taxes  to | | 406. City/Town Taxes  to | |
| 107. County Taxes  to | | 407. County Taxes  to | |
| 108. Assessments  to | | 408. Assessments  to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. GROSS AMOUNT DUE FROM BORROWER | 360,519.20 | 420. GROSS AMOUNT DUE TO SELLER | |
| 200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER: | | 500. REDUCTIONS IN AMOUNT DUE TO SELLER: | |
| 201. Deposit or earnest money | | 501. Excess Deposit (See Instructions) | |
| 202. Principal Amount of New Loan(s) | 359,000.00 | 502. Settlement Charges to Seller (Line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. | |
| 205. | | 505. | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments For Items Unpaid By Seller | | Adjustments For Items Unpaid By Seller | |
| 210. City/Town Taxes  to | | 510. City/Town Taxes  to | |
| 211. County Taxes  to | | 511. County Taxes  to | |
| 212. Assessments  to | | 512. Assessments  to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. TOTAL PAID BY/FOR BORROWER | 359,000.00 | 520. TOTAL REDUCT. AMT DUE SELLER | |
| 300. CASH AT SETTLEMENT FROM/TO BORROWER: | | 600. CASH AT SETTLEMENT TO/FROM SELLER: | |
| 301. Gross Amount Due From Borrower (Line 120) | 360,519.20 | 601. Gross Amount Due To Seller (Line 420) | |
| 302. Less Amount Paid By/For Borrower (Line 220) | ( 359,000.00 ) | 602. Less Reductions Due Seller (Line 520) | ( ) |
| 303. CASH ( X FROM ) ( TO ) BORROWER | 1,519.20 | 603. CASH ( TO ) ( FROM ) SELLER | |

The undersigned hereby acknowledge receipt of a completed copy of pages 1&2 of this statement & any attachments referred to herein

Borrower _John Phillip Gallegos_ (signature)

HUD-1 (3-86) RESPA, HB4305.2

9

00028976

Page 2

## L. SETTLEMENT CHARGES

| | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| 700. TOTAL COMMISSION Based on $ @ % Division of Commission (line 700) as follows: | | | |
| 701. $ to | | | |
| 702. $ to | | | |
| 703. Commission Paid at Settlement | | | |
| 704. | to | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | |
| 801. Loan Origination Fee  0.5000 % | to Washington Mutual Bank | 1,795.00 | |
| 802. Loan Discount  % | to | | |
| 803. Appraisal Fee | to Keith M. Annunson | 305.00 | |
| 804. | to | | |
| 805. Funding & Review Fee | to Washington Mutual Bank | 405.00 | |
| 806. Tax Procurement/Tracking | to Land America | 43.00 | |
| 807. Tax research | to Wamu - FA | 38.00 | |
| 808. Flood Determination | to Land America | 13.00 | |
| 809. Daytime Courier | to Washington Mutual Bank | 15.00 | |
| 810. Wire Transfer Fee | to Washington Mutual Bank | 35.00 | |
| 811. | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | |
| 901. Interest From 04/15/05 to 05/01/05 @ $ 41.030000/day ( 16 days %) | | 656.48 | |
| 902. Mortgage Insurance Premium for months to | | | |
| 903. Hazard Insurance Premium for years to | | | |
| 904. | | | |
| 905. | | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | | |
| 1001. Hazard Insurance  2.000 months @ $ 52.99 per month | | 105.98 | |
| 1002. Mortgage Insurance  @ $  per | | | |
| 1003. City/Town Taxes  @ $  per | | | |
| 1004. County Taxes  3.000 months @ $ 350.23 per month | | 1,050.69 | |
| 1005. Assessments  @ $  per | | | |
| 1006.  @ $  per | | | |
| 1007.  @ $  per | | | |
| 1008. | | 0.00 | |
| **1100. TITLE CHARGES** | | | |
| 1101. Escrow Fee | to Sharon E Best Escrow | 550.00 | |
| 1102. Escrow Fee-2nd | to | | |
| 1103. 1031 Exchange Fee | to | | |
| 1104. Title Insurance Binder | to | | |
| 1105. Document Preparation | to | | |
| 1106. Notary Fees | to | | |
| 1107. Attorney's Fees | to | | |
| (includes above item numbers: ) | | | |
| 1108. Title Insurance | to Fidelity National Title | 640.39 | |
| (includes above item numbers: ) | | | |
| 1109. Lender's Coverage  $ 359,000.00  640.39 | | | |
| 1110. Owner's Coverage  $ | | | |
| 1111. Reconveyance Processing Fee | to Sharon E Best Escrow | 100.00 | |
| 1112. | | | |
| 1113. | | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | |
| 1201. Recording Fees: Deed $  ; Mortgage $ 41.00 ; Releases $ | | 41.00 | |
| 1202. City/County Tax/Stamps: Deed $  ; Mortgage $ | | | |
| 1203. State Tax/Stamps: Revenue Stamps $  ; Mortgage $ | | | |
| 1204. Excise Tax | King County Treasurer | | |
| 1205. 1st 1/2 2005 Property Taxes | to King County Department of Finance | 2,101.38 | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | |
| 1301. Courier/Printing Fee | to Sharon E Best  Courier/Printing Fee | 60.00 | |
| 1302. Overnite Fee | to Sharon E. Best  Overnite Fee | 20.00 | |
| 1303. Estimated-Electric | | | |
| 1304. Estimated-Combined | | | |
| 1305. | | | |
| **1400. TOTAL SETTLEMENT CHARGES (Enter on Lines 103, Section J and 502, Section K)** | | 7,974.92 | |

By signing page 1 of this statement, the signatories acknowledge receipt of a completed copy of page 2 of the two page statement.

The undersigned hereby acknowledge receipt of a completed copy of pages 1&2 of this statement & any attachments referred to herein. I HAVE CAREFULLY REVIEWED THE HUD-1 SETTLEMENT STATEMENT AND TO THE BEST OF MY KNOWLEDGE AND BELIEF, IT IS A TRUE AND ACCURATE STATEMENT OF ALL RECEIPTS AND DISBURSEMENTS MADE ON MY ACCOUNT OR BY ME IN THIS TRANSACTION. I FURTHER CERTIFY THAT I HAVE RECEIVED A COPY OF THE HUD-1 SETTLEMENT STATEMENT.

TO THE BEST OF MY KNOWLEDGE, THE HUD-1 SETTLEMENT STATEMENT WHICH I HAVE PREPARED IS A TRUE AND ACCURATE ACCOUNT OF THE FUNDS WHICH WERE RECEIVED AND HAVE BEEN OR WILL BE DISBURSED BY THE UNDERSIGNED AS PART OF THE SETTLEMENT OF THIS TRANSACTION.

Sara McCormick
Settlement Agent

10

( 058087 / 058087 / 4 )

00028977

Certified to be a true and correct copy of the original.
by: _____

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Assessor's Parcel or Account Number: 923890084000
Abbreviated Legal Description:
SEE PRELIMINARY TITLE

[Include lot, block and plat or section, township and range]
Full legal description located on page 12

Trustee:
FIDELITY NATIONAL TITLE

Additional Grantees located on page

——————— [Space Above This Line For Recording Data] ———————

2007090100                                          00018074785710007
[Escrow/Closing #]                                  [Doc ID #]

# DEED OF TRUST

MIN 1001337-0002593732-0

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   OCTOBER 09, 2007   , together with all Riders to this document.

(B) "Borrower" is
JOHN P GALLEGOS

Borrower is the trustor under this Security Instrument.
(C) "Lender" is
Countrywide Bank, FSB.
Lender is a FED SVGS BANK
organized and existing under the laws of THE UNITED STATES
Lender's address is
1199 North Fairfax St. Ste.500, Alexandria, VA 22314

WASHINGTON-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

M Deed of Trust-WA
2006A-WA (06/07)(d/i)                Page 1 of 11                        Form 3048 1/01




11

Bank of America Confidential
Gallegos 000637

00031625

DOC ID #: 00018074785710007

(D) "Trustee" is
FIDELITY NATIONAL TITLE
17592 EAST 17TH STREET, #100, TUSTIN, CA 92680

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated OCTOBER 09, 2007 . The Note states that Borrower owes Lender
FOUR HUNDRED SIXTY FIVE THOUSAND FIVE HUNDRED and 00/100

Dollars (U.S. $ 465,500.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than NOVEMBER 01, 2037 .

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider   [ ] Condominium Rider              [ ] Second Home Rider
[ ] Balloon Rider           [ ] Planned Unit Development Rider [ ] 1-4 Family Rider
[ ] VA Rider                [ ] Biweekly Payment Rider         [ ] Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably

M Deed of Trust-WA
2006A-WA (06/07)                          Page 2 of 11                          Form 3048 1/01

Bank of America Confidential
Gallegos 000638

00031626

DOC ID #: 00018074785710007

grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY of KING
[Type of Recording Jurisdiction] [Name of Recording Jurisdiction]
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

which currently has the address of
7603 CALIFORNIA AVE SW, SEATTLE
[Street/City]
Washington 98136-2141 ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

M Deed of Trust-WA
2006A-WA (06/07)   Page 3 of 11   Form 3048 1/01

13

Bank of America Confidential
Gallegos 000639

00031627

DOC ID #: 00018074785710007

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by Applicable Law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs and the Trustee's fee for preparing the reconveyance.

24. **Substitute Trustee.** In accordance with Applicable Law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. **Use of Property.** The Property is not used principally for agricultural purposes.

26. **Attorneys' Fees.** Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument. The term "attorneys' fees," whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by Lender in any bankruptcy proceeding or on appeal.

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
JOHN P. GALLEGOS                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

14

M Deed of Trust-WA
2006A-WA (06/07)                Page 10 of 11                Form 3048 1/01

Bank of America Confidential
Gallegos 000646

00031634

OMB NO. 2502-0265

| A. | B. TYPE OF LOAN: | | | | |
|---|---|---|---|---|---|
| U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT **SETTLEMENT STATEMENT** | 1. ☐ FHA | 2. ☐ FmHA | 3. ☒ CONV. UNINS. | 4. ☐ VA | 5. ☐ CONV. INS. |
| | 6. FILE NUMBER: 200802008 | | 7. LOAN NUMBER: 6313378850 | | |
| | 8. MORTGAGE INS CASE NUMBER: | | | | |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(POC)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

1.0  3/98   (200802008/200802008.02)

| D. NAME AND ADDRESS OF BORROWER: | E. NAME AND ADDRESS OF SELLER: | F. NAME AND ADDRESS OF LENDER: |
|---|---|---|
| JOHN P. GALLEGOS<br>7603 CALIFORNIA SW STREET<br>SEATTLE, WASHINGTON 98136 | | BANK OF AMERICA |

| G. PROPERTY LOCATION: | H. SETTLEMENT AGENT: | I. SETTLEMENT DATE: |
|---|---|---|
| 7603 CALIFORNIA SW STREET<br>SEATTLE, WA 98136<br>KING County, Washington | Real Estate Title<br><br>PLACE OF SETTLEMENT<br>14900 Interurban Avenue S # 271<br>Seattle, Washington 98136 | January 23, 2008<br><br>Disburse:01/28/08 |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| 100. GROSS AMOUNT DUE FROM BORROWER: | | 400. GROSS AMOUNT DUE TO SELLER: | |
| 101. Contract Sales Price | | 401. Contract Sales Price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Borrower (Line 1400) | 3,960.60 | 403. | |
| 104. PAYOFF TO WAMU to WASHINGTON MUTUAL/#0690 | 380,650.04 | 404. | |
| 105. 2ND HALF OF TAXES to KING COUNTY ECOMMERCE | 2,266.72 | 405. | |
| Adjustments For Items Paid By Seller in advance | | Adjustments For Items Paid By Seller in advance | |
| 106. City/Town Taxes       to | | 406. City/Town Taxes       to | |
| 107. County Taxes       to | | 407. County Taxes       to | |
| 108. Assessments       to | | 408. Assessments       to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. GROSS AMOUNT DUE FROM BORROWER | 386,877.36 | 420. GROSS AMOUNT DUE TO SELLER | |
| 200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER: | | 500. REDUCTIONS IN AMOUNT DUE TO SELLER: | |
| 201. Deposit or earnest money | | 501. Excess Deposit (See Instructions) | |
| 202. Principal Amount of New Loan(s) | 383,200.00 | 502. Settlement Charges to Seller (Line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first Mortgage | |
| 205. | | 505. Payoff of second Mortgage | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments For Items Unpaid By Seller | | Adjustments For Items Unpaid By Seller | |
| 210. City/Town Taxes       to | | 510. City/Town Taxes       to | |
| 211. County Taxes       to | | 511. County Taxes       to | |
| 212. Assessments       to | | 512. Assessments       to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. TOTAL PAID BY/FOR BORROWER | 383,200.00 | 520. TOTAL REDUCTION AMOUNT DUE SELLER | |
| 300. CASH AT SETTLEMENT FROM/TO BORROWER: | | 600. CASH AT SETTLEMENT TO/FROM SELLER: | |
| 301. Gross Amount Due From Borrower (Line 120) | 386,877.36 | 601. Gross Amount Due To Seller (Line 420) | |
| 302. Less Amount Paid By/For Borrower (Line 220) | ( 383,200.00) | 602. Less Reductions Due Seller (Line 520) | ( ) |
| 303. CASH ( X FROM ) ( TO ) BORROWER | 3,677.36 | 603. CASH ( TO ) ( FROM ) SELLER | 0.00 |

The undersigned hereby acknowledge receipt of a completed copy of pages 1&2 of this statement & any attachments referred to herein.

Borrower 
JOHN P. GALLEGOS

Seller

HUD1

15

00026188

Page 2

## L. SETTLEMENT CHARGES

| | | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|
| 700. TOTAL COMMISSION Based on Price $ | | @ 6.0000 % | | |
| Division of Commission (line 700) as Follows: | | | | |
| 701. $ | to | | | |
| 702. $ | to | | | |
| 703. Commission Paid at Settlement | | | | |
| 704. | to | | | |
| 800. ITEMS PAYABLE IN CONNECTION WITH LOAN | | | | |
| 801. Loan Origination Fee       % | to | | | |
| 802. Loan Discount         0.6600 % | to BANK OF AMERICA | | 2,529.12 | |
| 803. Appraisal Fee | to BANK OF AMERICA | POC:835.00 | | |
| 804. Credit Report | to BANK OF AMERICA | POC:50.80 | | |
| 805. Lender's Inspection Fee | to | | | |
| 806. Mortgage Ins. App. Fee | to | | | |
| 807. Assumption Fee | to | | | |
| 808. TAX SERVICE FEE | to BANK OF AMERICA | | 75.00 | |
| 809. APPLICATION FEE | to BANK OF AMERICA | POC:8200.00 | | |
| 810. FLOOD DETERMINATION FEE | to BANK OF AMERICA | | 11.00 | |
| 811. LENDER CLOSING FEE | to BANK OF AMERICA | | 819.00 | |
| 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | | |
| 901. Interest From 01/28/08 to 02/01/08 @ $ 60.370000/day ( 4 days %) | | | 241.48 | |
| 902. Mortgage Insurance Premium for       months to | | | | |
| 903. Hazard Insurance Premium for   1.0 years to | | | | |
| 904. | | | | |
| 905. | | | | |
| 1000. RESERVES DEPOSITED WITH LENDER | | | | |
| 1001. Hazard Insurance        months @ $       per month | | | | |
| 1002. Mortgage Insurance      months @ $       per month | | | | |
| 1003. City/Town Taxes         months @ $       per month | | | | |
| 1004. County Taxes            months @ $       per month | | | | |
| 1005. Assessments             months @ $       per month | | | | |
| 1006.                         months @ $       per month | | | | |
| 1007.                         months @ $       per month | | | | |
| 1008.                         months @ $       per month | | | | |
| 1100. TITLE CHARGES | | | | |
| 1101. Settlement or Closing Fee | to Real Estate Title | | 50.00 | |
| 1102. Abstract or Title Search | to | | | |
| 1103. Title Examination | to | | | |
| 1104. Title Insurance Binder | to | | | |
| 1105. Document Preparation | to | | | |
| 1106. Notary Fees | to | | | |
| 1107. Attorney's Fees | to | | | |
| (includes above item numbers: ) | | | | |
| 1108. Title Insurance | to Real Estate Title Agent for LandAmerica - TICA | | 250.00 | |
| (includes above item numbers: ) | | | | |
| 1109. Lender's Coverage      $ 383,200.00 | | | | |
| 1110. Owner's Coverage       $ | | | | |
| 1111. COURIER / WIRE FEE | to Real Estate Title | | 25.00 | |
| 1112. TAX CERTIFICATE | to Real Estate Title | | 25.00 | |
| 1113. ENDORSEMENT 100; 110.9 | to Real Estate Title | | 70.00 | |
| 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES | | | | |
| 1201. Recording Fees: Deed $      ; Mortgage $ 44.00 ; Releases $ 21.00 | | | 65.00 | |
| 1202. City/County Tax/Stamps: Deed       ; Mortgage | | | | |
| 1203. State Tax/Stamps:   Revenue Stamps       ; Mortgage | | | | |
| 1204. | | | | |
| 1205. | | | | |
| 1300. ADDITIONAL SETTLEMENT CHARGES | | | | |
| 1301. Survey | to | | | |
| 1302. Pest Inspection | to | | | |
| 1303. | | | | |
| 1304. | | | | |
| 1305. | | | | |
| 1400. TOTAL SETTLEMENT CHARGES (Enter on Lines 103, Section J and 502, Section K) | | | 3,960.60 | |

By signing page 1 of this statement, the signatories acknowledge receipt of a completed copy of page 2 of this two page statement.

_____
Real Estate Title
Settlement Agent

Certified to be a true copy.

16

( 200802008 / 200802008 / 33 )

00026189

# BANK OF AMERICA EQUITY MAXIMIZER® AGREEMENT AND DISCLOSURE STATEMENT

**ACCOUNT NUMBER** 35368200148495499

**Borrower:** JOHN P. GALLEGOS

**Lender:** Bank of America, N.A.
c/o North Carolina Main Office
101 Tryon Street
Charlotte, N.C. 28255

**CREDIT LIMIT:** $ 100,000.00    **DATE OF AGREEMENT:** 01 / 23 / 08

**Introduction.** This Bank of America Equity Maximizer ® Agreement and Disclosure Statement ("Agreement") governs your line of credit (the "Equity Maximizer Account") issued through Bank of America, N.A. In this Agreement, the words "Borrower," "you," "your," and "Applicant" mean each and every person who signs this Agreement, including all Borrowers named above. The words "we," "us," "our," and "Lender" mean Bank of America, N.A. **You agree to the following terms and conditions:**

**Promise to Pay.** You promise to pay Bank of America, N.A., or order, the total of all credit advances and **FINANCE CHARGES**, together with all costs and expenses for which you are responsible under this Agreement or under the "Security Instrument" which secures your Equity Maximizer Account (**"Security Instrument"**). You will pay your Equity Maximizer Account according to the payment terms set forth below. If there is more than one Borrower, each is jointly and severally liable on this Agreement. This means we can require any Borrower to pay all amounts due under this Agreement, including credit advances made to any Borrower. Each borrower authorizes any other borrower, on any other borrower's signature alone, to cancel the Equity Maximizer Account, to request and receive credit advances, and to do all other things necessary to carry out the terms of this Agreement. We can release any Borrower from responsibility under this Agreement, and the others will remain responsible.

**Term.** The term of your Equity Maximizer Account will begin as of the date of this Agreement ("Opening Date") and will continue until     JANUARY 23rd, 2033     ("Maturity Date"). All indebtedness under this Agreement, if not already paid pursuant to the payment provisions below, will be due and payable upon maturity. The draw period of your Equity Maximizer Account will begin on the date after the Opening Date following the expiration of the right to cancel, the perfection of the Security Instrument securing this agreement, receipt of all required certificates of noncancellation, and the meeting of all our other conditions and will continue as follows: 120 months ("Draw Period"). You may obtain credit advances during this Draw Period. After the Draw Period ends, the Repayment Period will begin and you will no longer be able to obtain credit advances. The length of the Repayment Period is as follows: up to 180 months depending on the payment schedule set forth below. You agree that we may renew or extend the period during which you may obtain credit advances or make payments.

**Minimum Payment**

**During the Draw Period.** The "Total Minimum Payment Due" is equal to the Variable Rate Balance Minimum Payment below, the payment due, if any, for any outstanding Fixed Rate Loan Option and any past due amounts from prior billing periods. (Some Fixed Rate Loan Options may have a different due date and are not figured in the calculation of the Total Minimum Payment Due). At any time you may pay more than the Total Minimum Payment Due, make additional payments or pay in full or in part the Outstanding Balance. The "Outstanding Balance" is the new balance of the Equity Maximizer Account (which, if applicable, includes principal, accrued interest on the outstanding principal, fees and charges, Property Expenses (defined as any expense which we incur because you do not fulfill all obligations of this Agreement or if you or another party does not fulfill all obligations of the Security Instrument for the property which secures this Agreement) and any voluntary insurance or Borrowers Protection Plan™. We reserve the right to apply payments in any manner we choose, without notice. Your "Variable Rate Balance" is all of your Outstanding Balance that is not part of a Fixed Rate Loan Option.

You may choose any of the following monthly and quarterly Draw Period payment options. Your billing statement will reflect the option you have chosen. You may also change your Draw Period payment option at a later time.

  **Variable Rate Balance Minimum Payment** – Depending on what payment schedule option you choose for the Draw Period, the Variable Rate Balance Minimum Payment may vary. The Variable Rate Balance Minimum Payment will not be less than the amount of accrued interest and any voluntary insurance, plus any unpaid fees.

CLS3312-1 /0010 /AA  5-04

Reference No: 013009 - 080161343310

Page 1 of 14

Washington

17

Bank of America Confidential
Gallegos 000015

00031002

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Interpretation.** You agree that this Agreement, together with the Security Instrument, is the best evidence of your agreements with us. If we go to court for any reason, we can use a copy, filmed or electronic, of any periodic statement, this Agreement, the Security Instrument or any other document to prove what you owe us or that a transaction has taken place. The copy, microfilm, microfiche, or optical image will have the same validity as the original. You agree that, except to the extent you can show there is a billing error, your most current periodic statement is the best evidence of your obligation to pay.

**Severability.** If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable.

**Acknowledgment.** You understand and agree to the terms and conditions in this Agreement. By signing this Agreement, you acknowledge that you have read this Agreement. You also acknowledge receipt of a completed copy of this Agreement, including the Fair Credit Billing Notice and the early home equity line of credit application disclosure, in addition to the handbook entitled "When Your Home Is On The Line: What You Should Know About Home Equity Lines of Credit," given with the application.

This Agreement is dated   01/23/08

**THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**

**BORROWER:**

X _[signature]_ (Seal)     X _____ (Seal)
JOHN P. GALLEGOS

X _____ (Seal)     X _____ (Seal)

**Effective Disbursement Date:** 1/28/08

18