```
                  IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF COLORADO

Criminal Action No. 11-cr-00355

UNITED STATES OF AMERICA,

     Plaintiff,

vs.

JOHN PHILLIP GALLEGOS,

     Defendant.
_____

                     **REPORTER'S TRANSCRIPT**
                      (Sentencing Hearing:  Order)
_____

       Proceedings before the HONORABLE MARCIA S. KRIEGER,
Judge, United States District Court for the District of
Colorado, commencing at 1:46 p.m., on the 19th day of
September, 2013, in Courtroom 901A, United States Courthouse,
Denver, Colorado.
```

THERESE LINDBLOM, Official Reporter
901 19th Street, Denver, Colorado 80294
Proceedings Reported by Mechanical Stenography
Transcription Produced via Computer

|   |   |
|---|---|
| 1 | **APPEARANCES** |
| 2 | LINDA KAUFMAN and MARTHA PALUCH, Assistant U.S. |
| 3 | Attorneys, 1225 17th Street, Suite 700, Denver, Colorado, |
| 4 | 80202, appearing for the Government. |
| 5 | DARLENE BAGLEY, Attorney at Law, Ridley, McGreevy, & |
| 6 | Winocur P.C., 303 16th Street, Suite 200 Denver, Colorado, |
| 7 | 80202, appearing for the Defendant. |
| 8 | WILLIAM TAYLOR , Attorney at Law, 303 16th Street, |
| 9 | Denver, Colorado, 80202, appearing for the defendant. |
| 10 |   |
| 11 | (The following proceedings were had and entered of |
| 12 | record after the Court heard the arguments of counsel and |
| 13 | statement of defendant:) |
| 14 | *THE COURT:*  Thank you. |
| 15 | Then I'll announce the sentence I intend to impose |
| 16 | here.  Of course, counsel, you'll have a final opportunity to |
| 17 | make legal objections before judgment is actually entered.  And |
| 18 | if you believe that the sentence is premised upon error or I |
| 19 | raise an issue you haven't had adequate opportunity to |
| 20 | consider, then I invite you to request a continuance. |
| 21 | Imposition of a sentence in a federal criminal case is |
| 22 | governed by a number of statutes.  The umbrella statute is 18 |
| 23 | U.S.C. Section 3553.  In imposing sentence in this case, the |
| 24 | Court has considered the objectives and the factors that are |
| 25 | set out in that statute.  That statute requires that the |

1  sentence be sufficient but not greater than necessary to
2  satisfy particular objectives:  To reflect the seriousness of
3  the offense; to promote respect for the law; to provide just
4  punishment; to adequately deter criminal conduct; to protect
5  the public from further crimes by the defendant; to provide the
6  defendant with needed educational or vocational training,
7  medical care, or other correctional treatment in the most
8  effective manner.
9       To fashion a sentence that meets these objectives, the
10 statute directs me to consider the nature and circumstances of
11 the offense; the history and characteristics of the defendant;
12 the kinds of sentences that are available; the sentence
13 prescribed by the federal sentencing guidelines; the need to
14 avoid unwarranted sentence disparities among defendants with
15 similar records found guilty of similar conduct; and in the
16 appropriate case, the need for restitution.
17      Now, at the beginning of this hearing, I identified
18 those documents that I had considered.  Some of the documents
19 were motions to restrict access to other documents.  And I
20 denied all of those motions with one limitation, and that was
21 document -- Exhibit B to Document No. 264.  The Government's
22 motions to restrict all concerned trying to find Ms. Weingart
23 and her husband after they absconded in violation of the terms
24 of their pretrial release.  They have both been apprehended,
25 and as a consequence, there is no need to restrict those --

1  access to those documents.

2  In addition, the Government filed a sentencing
3  statement that was filed under restriction.  Our local rules
4  provide that sentencing statements are not filed under
5  restriction, either for the defendant or for the prosecution.
6  Now, I suspect that the reason it was filed under restriction
7  was because the defense had asked for their sentencing
8  statement to be filed under restriction.  And I denied that
9  motion, and I did so because it is important that the public
10 understand what arguments are made in order to understand what
11 sentence I impose.

12 Now, in the motion to restrict, there was reference to
13 a psychiatric examination.  And that report and the information
14 considered by that witness is Exhibit B.  And that is the one
15 thing that is subject to restriction here, and it is subject to
16 restriction because it contains personal medical information
17 about the defendant that is not pertinent to the determination
18 to be made as to sentencing.

19 I confirmed with counsel that they had -- they and the
20 defendant had had opportunity to review all the documents that
21 I referenced.  I asked whether there were additional documents,
22 and counsel identified particular documents to be considered.
23 I have considered those.  And in fact, I will make reference to
24 one of them.

25 I asked whether there were any objections to the most

1 recent presentence report and the addenda attached; there were
2 none.  I asked whether there was any dispute as to the
3 calculation of the sentence in the presentence report; there
4 was none.

5 Before we get to that calculation, let me note, there
6 were no motions for downward departure.  There was a request
7 for a variance.  Now, the place that we start for purposes of
8 analysis is the count of conviction.

9 This case was brought on an Indictment that had
10 multiple counts, charging all kinds of crimes associated with a
11 scheme devised by Ms. Weingart to obtain repetitive financing
12 on properties for which no consideration was given.  This
13 financing was obtained based on false information supplied to
14 the government-backed lending institutions, and Ms. Weingart
15 was charged with a variety of crimes associated with that
16 scheme.  Initially, so was Mr. Gallegos.  But the Government
17 dismissed those charges against Mr. Gallegos, and he pled
18 guilty to a single charge, violation of 18 U.S.C. Section 1014,
19 making a false statement to a bank.

20 Now, the elements for that particular charge are set
21 out in the plea agreement, and that's why I am referring to the
22 plea agreement.  First, that the institution was insured by the
23 Federal Deposit Insurance Corporation; secondly, that
24 Mr. Gallegos made a false statement to the institution; third,
25 that he knew that the statement was false when he made it; and,

1  fourth, that he intended to influence the bank to loan him
2  money.  This isn't about whether or not or why he didn't review
3  the loan application.  It's about making a false statement.
4  And the false statement that he admitted to making is that he
5  had reviewed the documents when he knew he hadn't.
6           The significance of the information is that there was
7  information submitted to the institution that was false and
8  caused a loss to the institution, and we take that into account
9  in the calculation of restitution.  But what Mr. Gallegos is
10 being sentenced for is not the scheme that his mother developed
11 or implemented, it's not all of the false representations in
12 the loan application, it's not for not reviewing the loan
13 application.  It's for saying that he did when he didn't.  A
14 lie.  That's what he's being punished for.  And that is the
15 count of conviction that was determined by the Government to be
16 the subject of the Information and to which Mr. Gallegos pled
17 guilty.
18          For that offense, the calculation of the sentence as
19 set forth in the presentence report, which the parties agree is
20 the correct calculation under the federal sentencing
21 guidelines, is as follows:
22          For violation of 18 U.S.C. Section 1014, sentencing
23 guideline Section 2B1.1(a)(1) sets the Base Offense Level at 7.
24 Because the loss that was suffered by virtue of the false
25 statement, the signing of the application and the

1   representation that the information in it was true, accurate,
2   and correct, exceeds $400,000, there is a 14-level increase.
3   And the restitution amount here for the loss is $965,847.32.
4   That results in an Adjusted Offense Level of 21.  Mr. Gallegos
5   gets the maximum reduction on the offense level for acceptance
6   of responsibility.  That is a three-level reduction.  It
7   results in a Total Offense Level of 18.
8           Now, he has no criminal history convictions, and he
9   has no juvenile adjudications.  He has no criminal history
10  points whatsoever.  That puts him in the lowest criminal
11  history under the guidelines.
12          For an offense level of 18 and a Criminal History
13  Category of I, the guidelines recommend incarceration of 27 to
14  33 months, supervised release of 2 to 5 years, a fine of $6,000
15  to $1 million, and a special assessment of $100 is required
16  because there is one count of conviction.
17          The Government asked for a sentence in the guideline
18  range.  The defense asks for a downward variance to time
19  served, which is 1 day in jail.  The argument for the variance
20  is as follows:  That Mr. Gallegos had a relationship with his
21  mother in which he was unusually passive and trusting, that he
22  had cognitive deficits and therefore relied on her to make
23  certain decisions, and their relationship dynamics put her in
24  the position of controlling him.  That's how I understand the
25  argument.

1        That is not grounds for a variance. What we are
2   looking at here is the nature and circumstances of the offense.
3   We're not talking about the scheme, we're not talking about the
4   relationship between Mr. Gallegos and his mother, we're talking
5   about telling a lie, saying on a piece of paper, I read
6   documents and the information in them is true, accurate, and
7   correct, when he knew that he hadn't read them, and he couldn't
8   make that representation. I've not heard anything that
9   suggests that his mother forced him to do that, specifically
10  told him to do that, cajoled him to do that, or threatened him
11  to do that.
12       Now, there is a difference between being unable to
13  make another choice and have it be hard to make a choice. The
14  law recognizes that when someone is unable to make the correct
15  choice, they should not be held accountable. But when it's
16  simply hard to make the correct choice, they are held as
17  accountable as the person for whom it was easy to make the
18  correct choice. There is nothing before me that suggests that
19  Mr. Gallegos did not recognize that this was a false statement
20  or that he was forced into making it.
21       Now, I know that the nature of this case changed
22  during the course of prosecution, but I am troubled that
23  Mr. Gallegos in his allocution believes that what he did wrong
24  here was trusting his mother.
25       Mr. Gallegos, you're not being punished for trusting

1  your mother; you're being punished for telling a lie.  And
2  you're not being punished for not having looked at these
3  documents; you're being punished for saying that you did when
4  you knew that you didn't.  Your obligation here was to refuse
5  to sign because you could not represent that the information in
6  the documents was true, accurate, and correct, because you
7  hadn't looked at it.  And that's the basis of the offense for
8  which you're being punished.
9        So I am not persuaded by either the Government's
10 argument that you should have looked at all of this stuff and
11 you should have known that everything in the application was
12 false, and I'm not persuaded by the medical opinion that your
13 relationship with your mother and your dependence on her
14 somehow influenced the making of this false statement.  That's
15 not grounds for a variance, in my view.
16       The second argument that's made is that Mr. Gallegos
17 has a positive HIV status and that that condition cannot be
18 adequately addressed in prison.  I'm not persuaded by that
19 argument either.  The burden to establish a medical condition
20 that prevents a sentence from being imposed is on the defense.
21 The evidence before the Court includes references in letters
22 from Bureau of Prisons officials that say that the HIV status
23 is not unique, there are lots of people in prison who have a
24 positive HIV status.  The question is, can the Bureau of
25 Prisons adequately treat Mr. Gallegos if I send him to prison?

1  And I have no evidence that says that they cannot, and I cannot
2  infer that they will be unable to appropriately treat him
3  simply because it's the Bureau of Prisons that's writing the
4  letters that are before me.  So that is not grounds for a
5  variance.  I'm not persuaded that I should vary on that basis.
6         The third argument that is made for a variance is that
7  Mr. Gallegos has come a long way in his recognition of
8  accountability for his own actions.  And that is evidenced by
9  his voluntary cooperation with the Government in trying to
10 locate his mother and his stepfather after they absconded,
11 contrary to the restrictions imposed pretrial.  I believe this
12 justifies a variance.  That is something that is now a
13 characteristic of the defendant, that is not only notable, but
14 it is not taken into account by the guideline calculation,
15 because there was no 5K1.1 filed.
16        When I look at what kind of variance should be
17 imposed, I look at the sentencing objectives and the sentencing
18 factors.  This was a very serious offense.  It caused a
19 significant loss.  The loss was caused by telling a lie.  And I
20 am not concerned about the message that has been argued should
21 or should not be sent with regard to reviewing loan
22 applications.  What I am concerned about are people who tell
23 lies on loan applications.  And saying that you've reviewed
24 them and the information is true and accurate and complete when
25 it's not is a lie.  And there has to be a punishment for lying

1  on a loan application in order to deter others from lying on
2  loan applications.
3       I am also concerned that Mr. Gallegos has really
4  benefited from the big picture thinking here about, how did he
5  get in this position?  And how does he avoid getting into this
6  position in the future?  But his analysis and his attorney's
7  analysis has been, this position is making decisions in concert
8  with his mother.  This crime is not about making decisions in
9  concert with mom.  This crime is about telling the truth and
10 failing to tell the truth.  And that is not the focus of what
11 Mr. Gallegos has said.  So what I'm concerned about is making
12 sure that he tells the truth in the future.
13      Now, he is entitled to and I must provide for
14 educational or vocational training, medical care, or other
15 correctional treatment in the most effective manner.  And I am
16 satisfied that the Bureau of Prisons can do that.
17      The sentence I intend to impose here is a variant
18 sentence.  It is a variant sentence -- downward variance, and I
19 intend to impose a sentence of 12 months and 1 day
20 incarceration.  I do not believe that one day in jail is a
21 sufficient sentence for the kind of lie that was told here or
22 for the consequences that resulted from that lie.  But
23 similarly, I believe that Mr. Gallegos has engaged in behavior
24 that is to his credit in being truthful and forthcoming in
25 telling the government what he knew about where his mother and

1  his stepfather were after they absconded.  And it is in
2  deference to that kind of behavior, truthful, forthcoming,
3  honest behavior, that a variance is imposed here.
4         So the sentence I intend to impose is 12 months and 1
5  day of incarceration, to be followed by -- and here I am going
6  to impose a guideline range -- 3 years of supervised release.
7  I find that Mr. Gallegos lacks the ability to pay a fine, in
8  light of the restitution obligation that will be imposed of
9  $965,847.32, and therefore, I do not intend to impose a fine.
10 But I do intend to impose a number of conditions on supervised
11 release that are directed to facilitate the paying of the
12 restitution sum.
13        I make the restitution obligation joint and several
14 with the restitution obligation of Ms. Weingart, and I intend
15 to impose a special assessment of $100.
16        Is there any need for clarification, further
17 explanation, or request for a continuance?
18        *MS. BAGLEY:*  May I have a minute?
19        No, Your Honor.
20        *MS. KAUFMAN:*  I do have one thing, Your Honor.  The
21 Court just indicated that the restitution would be ordered
22 joint and several with Ms. Weingart.  In fact, the loss in this
23 case is entirely distinct, based on different property, that
24 being California Avenue, from any of the properties which are
25 the basis of restitution in Ms. Weingart's case, those

1   properties being Lost Angel and Saxborough.  So the loss caused
2   by the defendant in this crime and the relevant conduct is
3   totally distinct from the loss caused by her in that crime.  So
4   it -- I would --
5            *THE COURT:*  So you didn't include this loss in her
6   restitution?
7            *MS. KAUFMAN:*  No, it's a different property
8   altogether.  This property was in Seattle, Washington, and the
9   properties on which she was convicted were in Colorado.
10           *THE COURT:*  All right.
11           Any comment by defense?
12           *MS. BAGLEY:*  The only request that we would make, Your
13  Honor, is that the sentence to the Bureau of Prisons, if you
14  make a recommendation that it could be served in the state of
15  Washington.  That's where Mr. Gallegos and his partner reside.
16           *THE COURT:*  All right.  I decline the request, and I
17  do so for several reasons.  First of all, there is a myth that
18  if the Court makes a recommendation, the Bureau of Prisons is
19  going to follow the recommendation.  It is a myth because in my
20  experience, they follow the recommendation less than half the
21  times I make the recommendation.  And they are perfectly within
22  their rights.  They have no obligation to follow the
23  recommendation by the Court at all.  I may be doing
24  Mr. Gallegos a favor by not making a recommendation, given the
25  frequency with which the Bureau of Prisons follows such

1  recommendations.

2  But the second reason is this: I am concerned about
3  Mr. Gallegos' safety in prison. And that should, in my view,
4  predominate over location. When the Bureau of Prisons makes a
5  determination of where to assign someone, they take into
6  account security and safety and bed space and need for
7  rehabilitative programs and for specialized medical care. And
8  to the extent that Mr. Gallegos needs special medical care or
9  there is a particular facility that will keep him safer than
10 somewhere else, I want the Bureau of Prisons to have the
11 discretion to do that, and I don't think that my determination
12 of locating him in Washington necessarily takes that into
13 account.

14 *MS. BAGLEY:* I guess the only other request would be
15 for a voluntary surrender, since Mr. Gallegos has appeared --

16 *THE COURT:* Any objection to that?

17 *MS. KAUFMAN:* No objection.

18 I have an additional request, Your Honor.

19 *THE COURT:* Okay.

20 *MS. KAUFMAN:* I apologize if the Court said this and I
21 missed it. I would ask that the Court specifically order that
22 the restitution be due and payable immediately.

23 *THE COURT:* I always do that. I did not make a
24 specific finding as to whether it will bear interest, however,
25 and the parties have not argued with regard to that. I find in

1  light of the size of the restitution and the likely income,
2  future income of the defendant, that he lacks the ability to
3  pay interest on the restitution, amount, and therefore, I do
4  not intend for it to bear interest.
5       Pursuant to the Sentencing Reform Act of 1984, it is
6  the judgment of the Court that the defendant, John Phillip
7  Gallegos, be committed to the custody of the Bureau of Prisons
8  to be imprisoned for a term of 12 months and 1 day.
9       Upon release from imprisonment, he'll be placed on
10 supervised release for a term of 3 years.  Within 72 hours of
11 release from the custody of the Bureau of Prisons, he'll report
12 in person to the probation office in the district to which he's
13 released.  While he's on supervised release, he will not commit
14 another federal, state, or local crime; he'll not possess a
15 firearm as defined in 18 U.S.C. Section 921; and he'll comply
16 with the standard conditions that have been adopted by the
17 Court.  I waive the mandatory drug testing provisions of 18
18 U.S.C. Section 3583(d) because the presentence report indicates
19 a low risk of future substance abuse by the defendant.  The
20 defendant will cooperate in the collection of DNA as directed
21 by the probation officer.
22      I find that there are special conditions of
23 supervision that should be imposed because they're reasonably
24 related to the factors enumerated in 18 U.S.C. Section 3553(a)
25 and 3583(d).

1           Part of the sentence includes a restitution
2  obligation, and that restitution sum will be due and payable
3  immediately.  During the term of supervised release, the
4  defendant will make periodic payments on the restitution sum
5  based upon his income and expenses and ability to pay.  Within
6  60 days of release from confinement, he'll meet with the
7  probation officer to develop a plan for the repayment of
8  restitution.  And the plan will be based upon his income and
9  expenses.  The plan will be forwarded to the Court for review
10 and approval.  The plan will be reviewed on a quarterly basis
11 by Mr. Gallegos and the probation officer.  And Mr. Gallegos
12 will submit to the probation officer all requested
13 documentation that pertains to his income and expenses so that
14 the plan can be adjusted in accordance therewith.
15          So long as there is a restitution obligation
16 outstanding, Mr. Gallegos will not incur new credit charges or
17 open additional lines of credit or obtain any loans of any type
18 without the approval of the probation officer.  And that
19 approval will not be given unless he is in compliance with the
20 periodic payment obligation imposed in accordance with the
21 schedule submitted and approved by the Court.
22          As directed by the probation officer, Mr. Gallegos
23 will apply any moneys received from income tax refunds, lottery
24 winnings, inheritances, judgments, and any anticipated or
25 unexpected financial gains to the outstanding court-ordered

1  financial obligation in this case.  The payments will be made
2  to the registry of the Court.  The account in the registry of
3  the Court will be maintained until a balance reaches $1,000.
4  Disbursement will be made on a *pro rata* basis to Bank of
5  America and JPMorgan Chase Bank in accordance with their *pro*
6  *rata* share of the restitution sum of $965,847.32.  No interest
7  will be borne on the restitution amount.  However, the
8  restitution obligation is due and payable immediately, as is a
9  special assessment of $100.  No fine is imposed for the reasons
10 specified.
11         Mr. Gallegos, I advise you with regard to your right
12 to appeal your sentence that you may appeal to the extent you
13 have any rights remaining under the terms of your plea
14 agreement.  In order to exercise any rights to appeal, you must
15 file a notice of appeal within 14 days after entry of the
16 judgment or you lose your requirement to appeal.  Now,
17 ordinarily, Ms. Bagley and Mr. Taylor would file that notice of
18 appeal for you.  But if for some reason they're unable or
19 unwilling to do so, and you wish to appeal, you may request and
20 I will direct the Clerk of Court to file a notice of appeal on
21 your behalf.
22         I recommend to the Bureau of Prisons that a medical
23 assessment be made of Mr. Gallegos and direct that the
24 probation officer ensure that the Bureau of Prisons has a copy
25 of the medical information provided by his doctor as to the

1   treatment he is currently receiving, with the expectation that

2   the Bureau of Prisons will provide similar or the same

3   treatment to Mr. Gallegos while he is detained.

4           I find that he is not likely to flee or pose a danger

5   to the safety of any other person or the community.  He will

6   surrender at the institution designated by the Bureau of

7   Prisons before noon within two weeks of receiving a designation

8   by the Bureau of Prisons.  His bond will be exonerated at the

9   time of his voluntary surrender to the institution designated

10  by the Bureau of Prisons.

11          Is there anything further that we need to address?

12          *MS. KAUFMAN:*  No, thank you, Your Honor.

13          *MS. BAGLEY:*  I don't believe so.

14          *THE COURT:*  Thank you.

15          Thank you, Ms. Kaufman; thank you, Ms. Paluch; thank

16  you, Ms. Bagley; thank you, Mr. Taylor; thank you to our

17  probation officer, our marshal staff, and our court staff.

18  That will conclude this hearing.

19          Good luck to you, Mr. Gallegos.

20          We'll stand in recess.

21          (Recess at 3:09 p.m.)

22                   REPORTER'S CERTIFICATE
        I certify that the foregoing is a correct transcript from
23  the record of proceedings in the above-entitled matter.
        Dated at Denver, Colorado, this 20th day of September,
24  2013.
                                  s/Therese Lindblom
25                           _____
                                  Therese Lindblom,CSR,RMR,CRR